USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-2170 UNITED STATES, Appellee, v. THREE JUVENILES, Defendants - Appellees. ____________________ GLOBE NEWSPAPER COMPANY, Intervenor - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Patti B. Saris, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ _____________________ Jonathan M. Albano, with whom Mark W. Batten, Alicia L. ___________________ _______________ _________ Downey and Bingham, Dana & Gould, were on brief for appellant. ______ _____________________ Eileen Penner, Attorney, Department of Justice, with whom _____________ Deval L. Patrick, Assistant Attorney General, and Jessica __________________ _______ Dunsay Silver, Attorney, Department of Justice, were on brief for _____________ appellee, United States. ____________________ July 31, 1995 ____________________ TORRUELLA, Chief Judge. This appeal requires us to TORRUELLA, Chief Judge _______________________ interpret and apply the confidentiality provisions of the Federal Juvenile Delinquency Act (the "Act"), 18 U.S.C. 5031-5042. We hold that the Act authorizes, but does not mandate, closure of juvenile proceedings. Although we disagree with the district court's interpretation of the statute, we nevertheless find that the court's decision to close the proceedings was within its discretion and proper under the Act. I. I. On July 19, 1994, the government charged three juveniles with civil rights violations under the Federal Juvenile Delinquency Act (the "Act"), 18 U.S.C. 5031-5042. The charges involved "hate crimes" allegedly committed by the juveniles as members of a white supremacist group. On the same day that the juveniles were charged, the grand jury indicted an adult, Brian Clayton, with violations of 18 U.S.C. 241 (conspiracy to violate civil rights) and 371 (conspiracy to intimidate and interfere with federally protected activities on account of race). The indictment charges that Clayton committed these violations as a member of the same white supremacist group to which the three juveniles allegedly belonged. Just prior to the juveniles' arraignments on July 20, 1994, intervenor-appellant Globe Newspaper Company (the "Globe") moved to intervene in the juvenile proceedings for purposes of gaining access to the arraignments and subsequent proceedings, as well as to any judicial documents filed in connection with those -2- proceedings. The district court allowed the Globe to intervene and granted it access to certain redacted court documents, but denied public access to the arraignments on the grounds that  5038 of the Act mandated closure of the proceedings. United ______ States v. Three Juveniles, Globe Newspaper Co., 862 F. Supp. 651, ______ ____________________________________ 658 (D. Mass. 1994). The court alternatively held that, even if closure were discretionary, it would close the proceedings in this case. See id. at 658. The Globe argues on appeal that the ___ __ First Amendment creates a right of access to juvenile proceedings, that the district court erred by interpreting the Act to mandate closure of juvenile proceedings, and that the factors set forth and relied upon by the district court in its opinion are not sufficiently compelling to justify closure of the proceedings. II. II. The issues presented by this appeal involve the interpretation and constitutionality of certain provisions of the Act. Because these are purely questions of law, our review is plenary. See United States v. Gifford, 17 F.3d 462, 472 (1st ___ _____________ _______ Cir. 1994); see also United States v. M.I.M., 932 F.2d 1016, 1019 ________ _____________ ______ (1st Cir. 1991) (district court's interpretation of statute is reviewed de novo). __ ____ The Act governs the detention and disposition of juveniles charged with delinquency. 18 U.S.C. 5031-5037. The statute also contains confidentiality provisions, set forth in -3- 5032 and 5038.1 Enacted in 1938, the Act was intended "to  ____________________ 1 Section 5032 provides in relevant part that: . . . any proceedings against [an alleged juvenile delinquent] shall be in an appropriate district court of the United States. For such purposes, the court may be convened at any time and place within the district, in chambers or otherwise _________________________ . . . .  18 U.S.C. 5032 (emphasis added). The second confidentiality provision, 5038, provides that: (a) Throughout and upon the completion of the juvenile delinquency proceeding, the records shall be safeguarded from disclosure to unauthorized persons. The records shall be released to the extent necessary to meet the following circumstances: (1) inquiries received from another court of law;  (2) inquiries from an agency preparing a presentence report for another court; (3) inquiries from law enforcement agencies where the request for information is related to the investigation of a crime or a position within that agency; (4) inquiries, in writing, from the director of a treatment agency or the director of a facility to which the juvenile has been committed by the court; (5) inquiries from an agency considering the person for a position immediately and directly affecting the national security; and (6) inquiries from any victim of such juvenile delinquency, or if the victim is deceased from the immediate family of such victim, related to the final disposition of such juvenile by the court in accordance with section 5037. -4- provide for the care and treatment of juvenile delinquents." H.R. Rep. No. 2617, 75th Cong., 3d Sess. 1 (1938). "[T]he Act's underlying purpose is to rehabilitate, not to punish, so as 'to assist youths in becoming productive members of our society . . .'." In re Sealed Case (Juvenile Transfer), 893 F.2d 363, ______________________________________ 367 (D.C. Cir. 1990) (quoting S. Rep. No. 1011, 93d Cong., 2d Sess. 22 (1974)); accord United States v. Welch, 15 F.3d 1202, ______ ______________ _____ 1211 n.12 (1st Cir. 1993), cert. denied, 114 S. Ct. 1863 (1994). ____ ______ To this end, the Act attempts to insulate juveniles from the stigma of a criminal record. In re Sealed Case, 893 F.2d at 367- _________________ 68; see also S. Rep. No. 1989, 75th Cong., 3d Sess. 1 (1938) _________  ____________________ Unless otherwise authorized by this section, information about the juvenile record may not be released when the request for information is related to an application for employment, license, bonding, or any civil right or privilege. Responses to such inquiries shall not be different from responses made about persons who have never been involved in a delinquency proceeding . . . . (c) During the course of any juvenile proceeding, all information and records relating to the proceeding, which are obtained or prepared in the discharge of an official duty by an employee of the court or an employee of any other governmental agency, shall not be disclosed directly or indirectly to anyone other than the judge, counsel for the juvenile and the Government, or others entitled under this section to receive juvenile records . . . . (e) Unless a juvenile who is taken into custody is prosecuted as an adult neither the name nor picture of any juvenile shall be made public in connection with a juvenile delinquency proceeding . . . . -5- ("[A] juvenile delinquent for whom there is some hope of rehabilitation should not receive the stigma of a criminal record that would attach to him throughout his life."). The confidentiality provisions of the Act are therefore quite essential to the Act's statutory scheme and overarching rehabilitative purpose. Based on its reading of the statute and its legislative history, the district court held that the Act allowed it some discretion to disclose information about juvenile proceedings, so long as the disclosure does not contravene the "express mandate" of 5038(e) that the juvenile's name and picture not be made public. 862 F. Supp. at 658. This construction of the Act, according to the district court, is also consistent with the Supreme Court's First Amendment jurisprudence. Id. at 655-56 __ (citing, inter alia, Globe Newspaper Co. v. Superior Court for _____ ____ ____________________ ___________________ the County of Norfolk, 457 U.S. 596, 608 (1982)). We turn now to _____________________ the Globe's contention that the district court's interpretation was in error. III. III. As the district court recognized, the Act implicates First Amendment concerns, and thus must be interpreted with the Supreme Court's First Amendment jurisprudence in mind. It is well-settled that the First Amendment provides a right of public access to most proceedings growing out of adult criminal cases. _____ See Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 3 (1986) ___ ____________________ ______________ ("Press-Enterprise II") (First Amendment provides right of access ___________________ -6- to transcript of preliminary hearing of a criminal prosecution); Press-Enterprise Co. v. Superior Court of California, 464 U.S. ____________________ _____________________________ 501, 508-510 (1984) ("Press-Enterprise I") (First Amendment ___________________ creates "presumption of openness" of voir dire proceedings in ____ ____ criminal case); Richmond Newspapers, Inc. v. Virginia, 448 U.S. _________________________ ________ 555, 580 (1980) (plurality opinion) (the public's right to attend criminal trials is implicit in First Amendment's guarantees).2 This First Amendment right of access is not absolute, however. Competing values and interests may warrant a denial of access to proceedings and records in some situations. Press-Enterprise II, ___________________ 478 U.S. at 9; see also Rivera-Puig v. Garc a-Rosario, 983 F.2d ________ ___________ ______________ 311, 314 (1st Cir. 1992). In such a case, reviewing courts must determine whether the closure is "essential to preserve higher values" and "narrowly tailored to serve that interest." Press- ______ Enterprise I, 464 U.S. at 510. ____________ Since the "Juvenile Court" movement began in this country at the end of the last century, all states, the District of Columbia, and Puerto Rico have adopted juvenile court systems. See In re Gault, 387 U.S. 1, 14 (1967). The development of the ___ ___________ juvenile justice system throughout the country has been marked by a "special sensitivity" about information regarding juveniles and "the impact that public dissemination of such information may  ____________________ 2 Although some circuits have recognized a public right of access to civil trials as well, see, e.g., Republic of ___ ____ _____________ Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 659 (3d ___________ ________________________ Cir. 1991), this Circuit has never decided whether the First Amendment mandates such a general right of access. Anderson v. ________ Cryovac, Inc., 805 F.2d 1, 10-11 (1st Cir. 1986). We find it ______________ unnecessary to do so here. -7- have on the youths involved." United States v. A.D., PG ______________ _________ Publishing Co., 28 F.3d 1353, 1357 (3d Cir. 1994) ("PG _______________ __ Publishing"). Accordingly, many, if not most, states currently __________ authorize or mandate closure of juvenile proceedings.3 The Supreme Court has also acknowledged this tradition of confidentiality of juvenile proceedings. See, e.g., In re Gault, ___ ____ ___________ 387 U.S. at 25 ("[T]here is no reason why, consistently with due process, a State cannot continue, if it deems appropriate, to provide and to improve provision for the confidentiality of records of police contacts and court action relating to juveniles."). The Supreme Court has never determined whether the First Amendment right of public access attaches to juvenile proceedings, and thus has not decided whether across-the-board closure of such proceedings violates the First Amendment. See PG ___ __  ____________________ 3 See, e.g., Ala. Code 12-15-65(a); Alaska Stat. 47.10.070(a); ___ ____ Conn. Gen. Stat. Ann. 54-76h; D.C. Code Ann. 16-2316(e); Ga. Code Ann. 15-11-28(c); Hawaii Rev. Stat. Tit. 31 s. 571-41(b); Idaho Juv. R. 22(b); Ill. Rev. Stats. Ch. 705 s. 405/l-5(6); Ky. Rev. Stat. Ann. 610.070(3); Miss. Code Ann. 43-21-203(6); Mo. Ann. Stat. 211.171(5); Nev. Rev. Stat. 62.193(1); N.H. Rev. Stat. Ann. 169-B:34; N.D. Cent. Code 27-20-24(5); Pa. Cons. Stat. Ann. 6336(d); R.I. Gen. L. 14-1-30; S.C. Code Ann. 20-7-755; S.D. Codified Laws Ann. 26-7A-36; Vt. Stat. Ann. Tit. 33 s. 5523(c); Va. Code 16.1-302; Wash. Rev. Code Ann. 13-34.110; W. Va. Code 49-5-1(d); Wis. Stat. Ann. 48-299(1)(a); Wyo. Stat. 14-6-224(b) (all authorizing or requiring that the general public be excluded from juvenile proceedings). See also Calif. Welf. & Inst. Code ________ 676(a); Me. Rev. Stat. Ann. Tit. 15 s. 3307(2)(B); Mass. Gen. Laws Ann. ch. 119 s. 65; Minn. Stat. Ann. 260.155(c); Okla. Stat. Ann. Tit. 10 s. 1111(A)(1); Tex. Fam. Code Ann. 54-08; Utah Code Ann. 78-3a-33(2) (all barring the public from juvenile proceedings except for those involving certain classes of offenses, such as murder, or when the juvenile is older than fifteen years).  -8- Publishing, 28 F.3d at 1357. In a very instructive case, __________ however, the Court addressed whether the First Amendment allows a statutory bar to public access to adult criminal trials during the testimony of sex-offense victims who are minors. See Globe, ___ _____ 457 U.S. at 607. Although the Supreme Court acknowledged the compelling state interests of protecting the victims from further trauma and embarrassment and encouraging other victims to come forward, it held that neither interest sufficiently justified a blanket closure in every case involving a youthful sex-offense victim. Id. at 607. The Court explained: __ [A]s compelling as that interest [in protecting the minor victims] is, it does not justify a mandatory closure rule, for _________ it is clear that the circumstances of the particular case may affect the significance of the interest. A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim. . . . Section 16A, in contrast, requires closure even if the victim does not seek the exclusion of the press and general public, and would not suffer injury by their presence. . . . In short, 16A cannot be viewed as a narrowly tailored means of accommodating the State's asserted interest: That interest could be served just as well by requiring the trial court to determine on a case-by-case basis whether the State's legitimate concern for the well-being of the minor victim necessitates closure. Such an approach ensures that the constitutional right of the press and the public to gain access to criminal trials will not be restricted except where necessary to protect the State's interest. Id. Significantly, the Court added: __ -9- We emphasize that our holding is a narrow one: that a rule of mandatory closure respecting the testimony of minor sex victims is constitutionally infirm. In __ individual cases, and under appropriate _________________________________________ circumstances, the First Amendment does _________________________________________ not necessarily stand as a bar to the _________________________________________ exclusion from the courtroom of the press _________________________________________ and general public during the testimony _________________________________________ of minor sex-offense victims. But a _________________________________________ mandatory rule, requiring no _________________________________________ particularized determinations in _________________________________________ individual cases, is unconstitutional. _____________________________________ Id. at 611 n.27 (emphasis added). __ In the instant case, the Globe argues that the public does have a First Amendment right of access to juvenile proceedings. Relying on the Court's language in Globe, 457 U.S. _____ at 607-08, 611, the Globe contends that the district court's construction of the Act as imposing "a mandatory closure requirement on all juvenile proceedings" renders the Act unconstitutional. Assuming arguendo that the First Amendment ________ right of public access does apply to some degree to juvenile proceedings,4 we agree that while the Globe case is not directly _____ applicable here, the Court's reasoning in that case strongly suggests that the district court's preferred reading of the Act raises some serious First Amendment concerns. There may, however, be no need to resolve this potential conflict between the Act and the First Amendment. It  ____________________ 4 This is, however, a highly dubious assumption, particularly in light of the long, entrenched, and well-founded tradition of confidentiality regarding juvenile proceedings, and the compelling rehabilitative purposes behind this tradition. See ___ supra note 2; see also In re Sealed Case (Juvenile Transfer), 893 _____ ________ _____________________________________ F.2d 363, 367 (D.C. Cir. 1990); discussion infra section IV.  _____ -10- is a well-established rule of statutory construction that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, [reviewing courts should] construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." DeBartolo Corp. v. Florida Gulf Coast Trades Council, 485 U.S. _______________ __________________________________ 568, 575 (1988). We therefore must examine the Act's purpose and language to determine whether it is necessary to call the Act's constitutionality into question by construing it to mandate an across-the-board bar to public access. IV. IV. As we have explained, the primary purpose of the Act is to facilitate the rehabilitation of juvenile delinquents. In re _____ Sealed Case, 893 F.2d at 367. Protection of the juvenile from ____________ the stigma of a criminal record by preserving the confidentiality of proceedings is an essential element of the Act's statutory scheme. See discussion supra at 5. ___ _____ The government argues that the Act's rehabilitative purpose can only be effectuated by prohibiting public disclosure of information about juvenile proceedings, and contends that the Act's language explicitly so directs. The Globe contends, conversely, that the Act's language does not mandate closure, but leaves the decision to the district court's discretion, to be determined on a case-by-case basis. In so contending, the Globe relies heavily on PG Publishing, 28 F.3d at 1359-60, and we _____________ -11- agree that the Third Circuit's reasoning in that case is quite persuasive. As the district court acknowledged, the Act does not expressly require a closed hearing for a juvenile proceeding. 862 F. Supp. at 655. Section 5032 of the Act provides that juvenile proceedings may be convened "at any time and place within the district, in chambers or otherwise." This phrase certainly seems to contemplate that district court judges will exercise their discretion to determine when, where, and in what manner juvenile proceedings will be conducted. Moreover, we agree with the Third Circuit that the language "in chambers or otherwise" strongly implies that the district court's discretion includes "a decision regarding the availability and degree of public access." PG Publishing, 28 F.3d at 1359. This section of _____________ the Act therefore provides "strong evidence" that Congress did not intend mandatory closure of all juvenile proceedings, but rather left the question of public access to the district court's discretion. Id. __ The first paragraph of 5038(a) of the Act states that "the records [of any juvenile proceeding] shall be safeguarded from disclosure to unauthorized persons." Pointing to this provision, the government contends that the Act explicitly prohibits disclosure of juvenile records except to the entities enumerated in subsequent paragraphs, and that this evidences Congressional intent to create an across-the-board ban on disclosure to any and all other parties. We do not think, -12- however, that this language is quite so conclusive; the section does not explicitly mandate denial of public access to juvenile _______ records, but provides only that the records are to be "safeguarded from disclosure to unauthorized persons." Giving ____________ this phrase a less strained, more common sense reading, we think that the section prohibits disclosure only to those persons not authorized by the district court to receive such information. ______________________ See PG Publishing, 28 F.3d at 1359 (reaching the same ___ ______________ conclusion). The only express prohibitive mandate contained in all of 5038(a) rests in the final paragraph, which prohibits the district court from authorizing disclosure in situations "when the request for information is related to an application for employment, license, bonding or any civil right or privilege." Nor do we think that the parties enumerated in paragraphs (a)(1) through (a)(6) of 5038 constitute the exclusive list of persons intended by Congress to ever receive information about juvenile proceedings. Rather, the paragraphs merely list those persons who have a right to obtain juvenile records upon request. Indeed, if this were meant to be an exclusive list, then the final paragraph of the section (prohibiting disclosure when the information is sought in relation to a job application, etc.) would be superfluous. PG __ Publishing, 28 F.3d at 1360. Read as a whole, then, we think __________ that 5038(a) further evidences Congressional intent to leave -13- disclosure of juvenile records within the district court's discretion.5 The only section of the Act that suggests that Congress intended an across-the-board bar to public access is 5038(e), which provides that "neither the name nor picture of any juvenile shall be made public in connection with a juvenile delinquency proceeding." The district court reasoned that if it were to permit public access to the proceedings, the juveniles' names would certainly, unavoidably, be made public, in direct contravention of 5038(e). 862 F. Supp. at 655. Because it saw no way to obey the letter of 5038(e) short of closing the proceedings, the district court interpreted the Act to mandate closure. Id. at 655-56. The government now urges us to affirm __ this interpretation, arguing that any other reading would render the confidentiality provisions a nullity. On this point, however, we are persuaded once again by the reasoning of the PG Publishing court, which explained: _____________ A prohibition against making a juvenile's name or picture available to the public, however, strikes us as an indirect and unlikely way for Congress to stipulate that all hearings under the Act will be closed to the public. State statutes that restrict access to juvenile proceedings generally do so directly and  ____________________ 5 The language of 5038(c) does not conflict with our interpretation. This section provides that all information and records relating to the proceeding "shall not be disclosed directly or indirectly to anyone other than the judge, counsel for the juvenile and the Government, or others entitled under __________________________ this section to receive juvenile records." (Emphasis added). We ________________________________________ read the underlined phrase to mean any other persons authorized by the court to receive information under 5038(a). -14- clearly. . . . We think it far more likely that 5038(e) was intended not to limit the discretion of trial judges to regulate access to juvenile delinquency proceedings, but to foreclose law enforcement officials from holding press conferences at which the name and picture of the juvenile would be "made public in connection with a juvenile delinquency proceeding." 28 F.3d at 1360-61 (quoting 18 U.S.C. 5038(e)). Certainly, if Congress intended to mandate closure of all juvenile proceedings, it could have done so expressly and directly. Cf., e.g., 18 ___ ____ U.S.C. 3509(e) (authorizing "the exclusion from the courtroom of all persons, including members of the press, who do not have a direct interest in the case" during the testimony of child witnesses). We also agree with the Globe that even if the prohibition on disclosure of a juvenile's name and picture prevents unfettered public access to proceedings, it does not necessarily follow that 5038(e) commands total closure. The statutory directive can in many instances be satisfied by other, less restrictive means. For example, public access to records or proceedings poses no risk of disclosure of the juvenile's picture, as cameras can be banned from the proceedings and names redacted from documents. Similarly, there are methods short of complete closure, such as the use of initials or pseudonyms, that would protect against inadvertent disclosure of the juveniles' names. Finally, we think that interpreting the entire Act in light of 5038(e), rather than vice versa, attributes undue -15- significance to that section. To hold that the Act must mandate closure because of 5038(e) is effectively to ignore strong indicia elsewhere in the statute that Congress did not intend to create a blanket prohibition on public access, but rather to vest discretion with the district courts to fashion proceedings in a manner most appropriate for each individual case. For these reasons, we hold that the Act does not mandate across-the-board closure for all juvenile proceedings, but merely authorizes closure, or any other measures designed to ensure confidentiality, to be determined on a case-by-case basis at the discretion of the district court.6 We think that this interpretation fully comports with the purpose and language of the statute as a whole, and is far preferable to a strained construction of the Act that mandates complete closure and thus triggers First Amendment concerns. V. V. We turn now to the Globe's final contentions on appeal, namely, that the district court's articulated reasons for closing the proceedings are not "sufficiently compelling" to justify closure in this case, that the court's order does not effectively serve its intended interests, and that the order is not "narrowly tailored." The Globe offers several theories in support of these contentions, none of which we find persuasive.  ____________________ 6 We emphasize that we are not holding or even suggesting that juvenile proceedings ought to be open. We are merely holding that the Act does not invariably require them to be closed. -16- As an initial matter, we note that the Globe's arguments on this point seem to rest on the assumption that juvenile proceedings should be open as a rule, and only compelling interests justify closure. Certainly, a district court must exercise its discretion soundly, and must articulate reasons which are supported by the record and in keeping with the policies of the Act. Contrary to the Globe's implied assumption, however, the language and policy of the Act, as well as the history of juvenile justice proceedings in this country over the past century, indicate that a court's exercise of its discretion to close juvenile proceedings is not an exception to some general rule of openness, but the norm. The district court's findings here were meticulously specific. The court first correctly noted the Act's overarching objective of protecting juveniles from stigma in order to facilitate rehabilitation. 862 F. Supp. at 657. The court found that these juveniles were particularly amenable to rehabilitation, based on the prosecutor's decision not to seek transfer to adult status and the clean prior records of two of the juveniles. Id. The district court also gave weight to the __ juveniles' opposition to open proceedings, noting that the media had already subjected the youths to overwhelming publicity, and concluding that adequate protection of the juveniles from stigma and public scrutiny would be impossible unless the proceedings were closed. Id. __ -17- The Globe contends that the court should not have relied upon the opposition of the juveniles themselves to open proceedings, as such a wish is "unremarkable" and "does not suggest that this case involves any individualized concern for closure different from those present in virtually every juvenile proceeding." As the government points out, however, protection of the accused is one of the strongest justifications for allowing public access to the proceeding. When the accused juvenile, on advice of counsel, opposes public access, this justification is vitiated. Further, the juveniles' own assessment of their interests is a highly reliable indicator of whether they will be irreparably stigmatized by open proceedings. Given the Act's strong policy in favor of protecting juveniles from such stigma, we think the juveniles' opposition to open proceedings was a relevant factor for the district court to consider. The Globe also attempts to downplay the significance of the fact that the juveniles had not been transferred for adult prosecution. The prosecutors' determination not to transfer the juveniles is based on an evaluation of criteria set forth by the Act, including the age and social background of the juvenile, the nature of the alleged offense, the extent of the juvenile's prior record, and the juvenile's present intellectual development and psychological maturity. 18 U.S.C. 5032. Because all of these criteria are highly significant indicators of the amenability of the juvenile to rehabilitation, they are also very relevant to -18- the court's decision whether to close the proceedings. By taking the prosecutors' decision into consideration, then, the court was also giving weight to these factors. That these factors will often militate in favor of closure in juvenile proceedings does not in any way diminish their relevance or weight; to the contrary, it merely underscores the Act's strong preference for preserving the confidentiality of juvenile records.7 The Globe also contends that the district court's order does not effectively serve its intended interests, as nothing in the court's opinion indicates that the closure order will "effectively preserve the juveniles' confidentiality." In its opinion, the district court recognized that media coverage of the proceedings had already been extensive, that one of the juveniles had already been interviewed, that the juveniles had already been identified several times in the press, and that many of the details of their alleged conduct had already been disclosed through the related adult criminal prosecution of Clayton. 862 F. Supp. at 659. The Globe now points to these facts and argues that because all this information had already been aired in the press, "whatever stigma the juveniles may acquire will attach even if the press is excluded from the proceedings." Therefore,  ____________________ 7 The Globe also suggests that the heinous nature of the juveniles' alleged conduct augments the public interest in "seeing justice done," and therefore supports opening the proceedings. Given the Act's policy of preventing stigma, however, this argument is completely misguided. It is precisely because the alleged crimes have provoked so much public outrage _______ and antipathy that closure becomes more appropriate, in order to best effectuate the Act's purpose. -19- according to the Globe, because the district court's closure order cannot possibly preserve the juveniles' anonymity, it is ineffective, and cannot stand. This is a flawed, circular argument with disturbing ramifications. Essentially, the Globe is arguing that because the press has already obtained and published some information, ____ any further attempts by the district court to preserve confidentiality are either futile or irrelevant. Contrary to the Globe's contention, the fact that the juveniles have already suffered stigma does not justify removing or denying them all further protections created by the Act. Moreover, we agree with the government that to allow the media to "leverage" partial information into an unfettered right of access to otherwise nonpublic proceedings would grant the media a dangerous control over important state interests. We therefore reject the Globe's contentions on this point, and hold that the district court's closure order sufficiently serves its stated purpose of preserving what confidentiality remains of the proceedings. The Globe also argues that the district court's closure order is not "narrowly tailored." Because the district court could have effected its intended purpose through less restrictive means, such as using pseudonyms and redacting identifying information from proceedings and records, the Globe argues, its total ban on public access was unwarranted. Again, we note that the Globe is relying on the dubious assumption that district courts must meet the extremely stringent First Amendment -20- standards applied to adult criminal cases in order to justify closure of juvenile proceedings. Even assuming, however, that such standards are applicable here, we find that they are sufficiently met by the court's order. As the district court recognized, it could not bar the media from publishing information legally obtained. 862 F. Supp. at 657 (citing Smith v. Daily Mail Publishing Co., 443 _____ __________________________ U.S. 97 (1979)). Because it had no way of ensuring that certain identifying information would remain confidential if the proceedings were open to the press, the court concluded that it had no less restrictive alternative to closing the proceedings. Id. We think this reasoning is quite sound. The identities of __ the juveniles had already been widely publicized. Redaction of the juveniles' names from the proceedings as the Globe suggests would therefore have been an exercise in futility. Realistically, the press would merely publish detailed accounts of the "redacted" proceedings, substituting the identifying information previously obtained. In short, redaction, or any other compromise measure, would have been ineffective in preserving the confidentiality of the proceedings.8  ____________________ 8 We likewise reject the Globe's arguments that the district court's order impermissibly infringes the public right of access to court records by shifting the burden of obtaining access onto the public. Rather than sealing the case file and requiring interested parties to move for further disclosures, the Globe suggests, the court should have done just the opposite and required trial counsel to move for impoundment of particular documents. This contention is yet another example of the Globe's attempt to force juvenile proceedings into the First Amendment framework developed for adult criminal proceedings. Section 5038(a) of the Act specifically provides that throughout a -21- Finally, the Globe contends that the district court's order violates the public's common law right of access to proceedings and records. It is true that "courts of this country recognize a general right to inspect . . . judicial records and documents." Nixon v. Warner Communications, Inc., 435 U.S. 589, _____ ___________________________ 597 (1978). The Supreme Court has explained, however, that this right is not absolute; rather, the decision as to such access is "best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Id. at 598-99. Assuming __ that this common law right of access applies to juvenile court records,9 we do not think that the district court's order here improperly infringes on this right. In this context, the qualified common law right of access to proceedings has been supplanted by the statutory scheme of the Act. As we interpret them, however, the Act's confidentiality provisions do not significantly alter or restrict that common law right in any way, but leave public access to the sound discretion of trial courts. Because the district court's order fully comports with the  ____________________ juvenile delinquency proceeding, "the records shall be safeguarded from disclosure to unauthorized persons." As we have explained, this section grants the district court the discretion to release juvenile records as it deems appropriate. The district court's order here meticulously tracks this language of the Act, and we therefore find that its method of determining public access to court records is entirely proper. 9 It is not altogether clear that this common law right of access applies to juvenile court records, in light of the long, sound tradition of preserving the confidentiality of juvenile proceedings. See supra note 4. ___ _____ -22- provisions of the Act and is thus a proper exercise of its discretion, the order cannot be said to infringe on any pre- existing common law right of access. We therefore reject the Globe's arguments on this point. VI. VI. In sum, we hold that the Act authorizes, but does not mandate, the closure of juvenile proceedings. The district court's closure order was fully justified on the record and was therefore an entirely proper exercise of its discretion under the Act. Affirmed. ________ -23-