Gennell v FedEx Corp et al.    05-cv-145-PB     3/19/14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Robert Gennell, Jr., et al.</u>

   v.                                 Case No. 05-cv-145-PB
                                    Opinion No. 2014 DNH 056
<u>FedEx Corp., et al.</u>


<u>MEMORANDUM AND ORDER</u>


The plaintiffs in this long-running dispute are a class of drivers based in New Hampshire who worked for defendant FedEx Ground Package System, Inc. ("FedEx").[1] Plaintiffs claim, among other things, that they are entitled to be reimbursed for work-related expenses pursuant to section 275:57(I) of the New Hampshire Revised Statutes. This Memorandum and Order resolves the parties' cross-motions for summary judgment addressing the drivers' reimbursement claim.


I.   <u>BACKGROUND</u>

In a prior order, I described the relationship between FedEx and its drivers as it existed during the class period. See <u>Gennell v. FedEx Ground Package Sys., Inc.,</u> 2013 DNH 110, 2-

---

[1] FedEx Ground Package System, Inc. is a subsidiary of FedEx Corporation. Some of the drivers that comprise the class worked for FedEx Home Delivery, a division of FedEx Ground.

6. As relevant here, each driver entered into a standard-form "Operating Agreement" ("OA") with FedEx. See Doc. No. 80-1. The OA requires each driver to purchase and bear "all costs and expenses incidental to operation" of their delivery vehicles, including the cost of fuel, maintenance, insurance, taxes, tolls, licenses, and other work-related expenses. Id.

The drivers agreed to the terms of the OA in order to obtain:

> the advantage of operating within a system that will provide access to national accounts and the benefits of added revenues associated with shipments picked up and delivered by other contractors throughout the FedEx Ground system. In order to get that advantage, [the driver] is willing to commit to provide daily pick-up and delivery service, and to conduct his/her business so that it can be identified as being part of the FedEx Ground system.

Id. FedEx paid each driver a weekly "settlement" payment "for services provided" pursuant to the OA. Id. A driver's total weekly settlement payment was calculated according to a formula that included individual payments for stops made; for packages handled; for each day that a qualified, uniformed driver provided a clean, properly maintained vehicle; for each day that a driver picked up and delivered packages in a sparsely populated area; for each day that a driver participated in FedEx's "Flex Program"; for each mile driven each day in excess

2

of 200 miles; and for each mile driven when the fuel price per gallon exceeded a specific threshold.  Id.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is considered genuine if the evidence allows a reasonable jury to resolve the point in favor of the nonmoving party, and a fact is considered material if it "is one 'that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, I examine the evidence in the light most favorable to the nonmoving party.  Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

The party moving for summary judgment bears the initial burden of identifying the portions of the record it believes demonstrate an absence of disputed material facts.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In determining what constitutes a material fact, "we safely can ignore 'conclusory

3

allegations, improbable inferences, and unsupported speculation.'" Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  On cross motions for summary judgment, the standard of review is applied to each motion separately.  See Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).

## III.  ANALYSIS

The drivers claim that FedEx must reimburse them for certain expenses that the drivers agreed to assume in the OA. They base their claim on section 275:57(I) of the New Hampshire Revised Statutes (the "Reimbursement Statute"),[2] which provides:

---

[2] The drivers alternatively claim - for the first time in their renewed motion for summary judgment - that they are also entitled to reimbursement pursuant to section 275:43(I, V) of the New Hampshire Revised Statutes.  That section states that "[e]very employer shall pay all wages due to employees within 8 days . . . after expiration of the week in which the work is performed . . . ."  It also provides that "payment of employee expenses, when such benefits are a matter of employment practice or policy, or both, shall be considered wages . . . when due." To the extent this claim constitutes a motion to amend the drivers' third amended complaint, I deny it on the ground that the proposed amendment would be futile.  See Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 132 (1st Cir. 2006) (denial of a motion to amend is warranted if the amended complaint fails to allege a viable claim).  It is clear for all the reasons discussed below that reimbursement of the claimed expenses in

4

An employee who incurs expenses in connection with his or her employment and at the request of the employer, except those expenses normally borne by the employee as a precondition of employment, which are not paid for by wages, cash advance, or other means from the employer, shall be reimbursed for the payment of the expenses within 30 days of the presentation by the employee of proof of payment.

FedEx responds by invoking the exception in the statute for expenses "paid for by wages, cash advance, or other means."[3] The assumptions underlying FedEx's interpretation of the exception are: (1) the Reimbursement Statute does not require an employer to reimburse an employee for expenses that are "paid for" by "wages"; (2) the "other means" by which an employer can pay for expenses and thereby avoid the duty to reimburse encompasses means of payment similar to "wages," see, e.g., State v.

---

this case was never "a matter of employment practice or policy." See N.H. Rev. Stat. Ann. § 275:43; Doc. No. 80-1.

[3] FedEx also relies on the exception for "expenses normally borne by the employee as a precondition of employment." This exception appears to have been added to the statute to exempt expenses that are not expressly assumed by an employee but that are typically borne by employees in that business as a matter of custom or practice. See Work Session on S.B. 402 before the H. Subcomm. on Labor, Indus. & Rehabilitative Servs., 2000 Gen. Ct., 157th Sess. (N.H. Mar. 16, 2000) (statement of Rep. Whittier) ("Concerns were expressed about allowing an employee to bring an action against his employer for expenses that were normally borne by the employee. Rep. Clegg cited the example of a mechanics [sic] tools. An amendment will be drafted."). I need not determine whether this exception applies here because the drivers expressly agreed to assume the expenses at issue in the OA.

Beauchemin, 161 N.H. 654, 658 (2011) ("[W]here specific words in a statute follow [or precede] general ones, the general words are construed to embrace only objects similar in nature to those enumerated by the specific words." (quoting State v. Breed, 159 N.H. 61, 65 (2009))); and (3) a payment that an employer makes to a statutory employee[4] in exchange for an agreement to perform services and assume related expenses is subject to the exception because it is a means of payment similar to the payment of expenses with "wages." After proposing its interpretation of the exception, FedEx argues that the drivers are not entitled to be reimbursed for their expenses because the payments they received pursuant to the OA are the "other means" by which they were paid for their expenses.

The drivers attack both FedEx's interpretation of the exception and its attempt to apply the exception to the facts of this case. They concede that a worker classified as an employee under both statute and common law would have no right to reimbursement if he or she were to accept payment from an

---

[4] In a prior ruling, the multidistrict litigation transferee court held that the drivers are "independent contractors" at common law but "employees" under certain state statutes, including the Reimbursement Statute. In re FedEx Ground Package Sys., Inc., 758 F. Supp. 2d 638, 698 (N.D. Ind. 2010). I refer to employees who have this status as "statutory employees."

6

employer in exchange for agreeing to assume work-related expenses.[5] The drivers argue, however, that FedEx has misinterpreted the exception in this case because it does not apply at all to statutory employees who are classified as independent contractors under the common law and who are characterized as such by their employers. They also contend that FedEx's argument fails even if it has correctly interpreted the statute because the payments they received pursuant to the OA were expressly made solely for "services" and were never intended to serve as reimbursement for expenses. I find neither argument persuasive.

A.    **The Reimbursement Statute**

The New Hampshire Supreme Court takes a common sense approach to statutory interpretation. Words are given their plain and ordinary meaning unless context suggests otherwise. Appeal of the Local Gov't Ctr., Inc., No. 2012-729, 2014 WL 92992, at *7 (N.H. Jan. 10, 2014). The statute is construed as

---

[5] See Doc. No. 79 (citing Doc. No. 72) ("The Court also posited a hypothetical in which an employee negotiates with an employer for an [sic] $5 an hour in salary in exchange for bringing in his own laptop to work but later asks to be reimbursed under § 275:57 for the cost of the computer. Under that hypothetical, the employee's purchase would be included within the 'other means' exception in § 275:57, and there would be no right of recovery.").

written and the court "will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. A court will "not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id.

In this case, the applicability of the exception turns both on whether the expenses at issue were "paid for" by FedEx and, if so, whether the means of payment qualifies as an "other means."

1. "Paid For"

The exception exempts work-related expenses assumed by an employee that are paid for by the employer via one of the designated categories of payment. It is generally understood that something is "paid for" when the payor "[p]erform[s] . . . an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation." See Black's Law Dictionary 1243 (9th ed. 2009) (defining "payment"). In this case, the parties' obligations were established by contract and the "valuable thing[s]" accepted by the drivers were their settlement payments.[6] Thus, in cases such

_____

[6] The drivers received other valuable things from FedEx as well, including "access to national accounts" and association with the

as this where payments are made pursuant to contract, the term "paid for" may be aptly restated in contract parlance as "incurred in consideration for." See id. at 347 ("Consideration" is "[s]omething . . . bargained for and received by a promisor from a promisee; that which motivates a person to do something . . . ."); see also Appeal of Lorden, 134 N.H. 594, 600 (1991) ("[T]he traditional definition of 'consideration'[ is] 'legal detriment, that has been bargained for by the promisor . . . and exchanged by the promisee . . . in return for the promise of the promisor.'" (quoting John D. Calamari & Joseph M. Perillo, Contracts § 4-2, at 189 (3d ed. 1987))), superseded by statute on other grounds, 1992 N.H. Laws 203:1.

## 2. "Other Means"

The exception also describes the categories of payment that qualify for the exception. To characterize these categories, I first look to the manner in which the legislature has defined the same terms elsewhere in chapter 275, which codifies New Hampshire's employee-protective legislation. See, e.g., Paey v.

---

goodwill of a successful corporation. See Doc. No. 80-1. These intangible benefits would ultimately be expected to lead to increased settlement payments, however. In any event, it is sufficient for present purposes to limit my consideration of the benefits received by the drivers to their settlement payments.

Rodrigue, 119 N.H. 186, 188 (1979) (construing the meaning of words within two statutes governing similar subject matter in pari materia). The only relevant term that is expressly defined in chapter 275 is "wages." The legislature has defined "wages" in section 275:42(III) to mean "compensation, including hourly health and welfare, and pension fund contributions . . . for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation." Section 275:43(V) expands the scope of this definition: "Vacation pay, severance pay, personal days, holiday pay, sick pay, and payment of employee expenses, when such benefits are a matter of employment practice or policy, or both, shall be considered wages pursuant to RSA 275:42, III, when due."[7] The term's traditional definition is similarly broad. See Black's Law Dictionary, supra, at 1716 ("Wages" are "[p]ayment for labor or services, usu[ally] based on time worked

---

[7] These definitions are only applicable to a subdivision of chapter 275 concerning "payment of wages." See N.H. Rev. Stat. Ann. §§ 275:42-:55. Although the Reimbursement Statute is not situated in the "payment of wages" subdivision, the enforcement and administration of its substantive provisions is governed by the wage claim procedures described in section 275:51, which is situated in the "payment of wages" subdivision. See id. § 275:57(II). Given that the Reimbursement Statute expressly incorporates portions of the "payment of wages" subdivision, the definition of the term "wages" in that subdivision is particularly significant here.

or quantity produced; specif[ically], compensation of an employee based on time worked or output of production. . . . includ[ing] every form of remuneration payable for a given period to an individual for personal services").

These definitions lead me to two conclusions. First, the term "wages," both as generally understood and as used by the legislature in other circumstances, is construed quite broadly to include virtually any benefit that an employer provides to an employee as compensation for the employee's services. Second, the term "services" (for which wages are provided) is construed in a similarly broad fashion to include detriments that an employee incurs on behalf of an employer beyond the simple provision of labor. In particular, both section 275:43(V) and the Reimbursement Statute contemplate that an employer may pay an employee wages to compensate the employee for assuming certain work-related expenses.

Although not statutorily defined, the term "cash advance" has an equally expansive traditional meaning. "Cash" is "[m]oney or its equivalent[, c]urrency or coins, negotiable checks, and balances in bank accounts," Black's Law Dictionary, supra, at 245, and thus a "cash advance" is "[t]he furnishing of [cash] before any consideration is received in return." See id.

11

at 60 (defining "advance").  As used here, "money or its equivalent" implies a variety of compensation methods, and "any consideration" contemplates an almost infinite range of potential detriments that an employee might incur on behalf of his or her employer.  The only clear limitation that can be gleaned from the definition of a "cash advance" is that the employer must provide (typically monetary) compensation before the employee provides consideration.

In contrast to "wages" and "cash advance," the term "other means" carries no independent meaning.  Rather, its definition is dependent on the specific terms accompanying it.  See, e.g., Beauchemin, 161 N.H. at 658; Narramore v. Clark, 63 N.H. 166, 167 (1884).  Because "other means" may be construed "to embrace only objects similar in nature to" the more specific terms "wages" and "cash advance," see Beauchemin, 161 N.H. at 658, it is reasonable to conclude that the legislature intended "other means" to refer to a benefit (such as money or its equivalent) that is provided to an employee in exchange for a service (such as a promise to assume work-related expenses) that is provided to an employer.  This definition, although not a paragon of precision, draws on elements of the traditional and statutory definitions of "wages" and "cash advance" and is in keeping with

12

the expansive scope of both of those terms.  It thus sufficiently captures the legislative intent to permit a broad range of payment methods to qualify for the exception.[8]

In sum, the first part of the exception exempts all expenses assumed by an employee in consideration for a benefit provided by the employer, and the second part only restricts the benefits that qualify for exemption to means of payment that are similar to wages and cash advances.  If an employee promises to perform services for an employer in a manner that assumes work-related expenses and the employer promises to provide a benefit to the employee in consideration for the employee's promise, then their agreement is part of the bargain forming an enforceable contract and the expenses have been paid for by the benefit promised by the employer.  This is true whether the employee is a common law employee who is paid in wages or a statutory employee paid through "other means."

---

[8] I recognize that in the absence of countervailing factors, remedial legislation should be construed expansively and exceptions to remedial obligations construed narrowly.  See Cobb v. Contract Transp., Inc., 452 F.3d 543, 559 (6th Cir. 2006).  But any canon of statutory interpretation is outweighed by a clear indication of legislative intent.  Chagnon v. Union-Leader Corp., 104 N.H. 472, 474 (1963), superseded by statute on other grounds, 1963 N.H. Laws 293.  With respect to the Reimbursement Statute, the legislature clearly intended to broadly exempt all work-related expenses assumed by employees in consideration for a benefit provided in return by their employers.

B.    The Drivers' Interpretation

The drivers challenge this interpretation of the exception and instead contend that the exception simply does not apply to expenses incurred by statutory employees who qualify as independent contractors under the common law. Rather than relying on textual arguments, they base their proposed interpretation on two policy arguments. First, they maintain that their interpretation should be adopted because employers will otherwise have an incentive to "misclassify" their employees as independent contractors. Next, they argue that the statute's designation as "protective legislation" requires that it be construed in their favor. Neither argument has merit.[9]

---

[9] The drivers also contend that an interpretation of the Reimbursement Statute that permits statutory employees to assume work-related expenses without being entitled to reimbursement would contravene section 275:50(I) of the New Hampshire Revised Statutes. That section provides in relevant part that "no provision of this subdivision may in any way be contravened or set aside by private agreement." The relevant subdivision, governing "payment of wages," does not incorporate the Reimbursement Statute. See supra note 7. Section 275:50(I) would thus appear to have no application to the Reimbursement Statute. Nevertheless, the New Hampshire Supreme Court has held that section 275:50 "prohibits the waiver by private agreement of any provision of RSA chapter 275." Fowler v. Town of Seabrook, 145 N.H. 536, 539 (2000). Although it is difficult to reconcile section 275:50's text with the Fowler court's interpretation of it, I need not determine the provision's true scope because it does not save the drivers' claim in any event. The claimed expenses were "paid for by wages, cash advance, or

14

### 1. Misclassification as Independent Contractors

The drivers claim that an adverse decision in this case will give employers "every incentive to (1) misclassify their workforce and (2) force all of their business expenses on that workforce, secure in the knowledge that if a court nullifies their classification, the misclassified employees will have no remedy to recover the business expenses they improperly bore." Doc. No. 79. According to the drivers, this would mean that "[m]isclassified employees would have fewer rights than properly classified employees." Id.

These concerns are unwarranted. The Reimbursement Statute grants "misclassified"[10] statutory employees exactly the same rights as workers who are properly classified as employees for all purposes under statute and common law. In New Hampshire,

---

other means," thus the drivers have no rights under the Reimbursement Statute that they could waive by private agreement.

[10] Under both Pennsylvania law, which governs the OA, see Doc. No. 80-1, and New Hampshire common law, the drivers are considered independent contractors rather than employees. See FedEx Ground Package Sys., 758 F. Supp. 2d at 698, 717. Consequently, FedEx did not misclassify the drivers by labeling them independent contractors. Because the drivers are only employees pursuant to certain New Hampshire statutes, FedEx erred only insofar as it made impermissible deductions from their settlement payments. See id. at 699; Gennell, 2013 DNH 110, 23-25 (holding as such).

15

employers and their workers - regardless of classification - may mutually agree to apportion work-related expenses to either party. Contrary to the drivers' assumption, simply labeling a common law or statutory employee as an independent contractor does not mean that the employee must then bear all his or her work-related expenses as a matter of law. That issue remains negotiable between the employee and the employer.[11]

## 2. Protective Legislation

The drivers next argue that FedEx's interpretation of the Reimbursement Statute ignores the legislature's intent, and the New Hampshire Supreme Court's instruction, that "protective legislation" such as the Reimbursement Statute should be construed so as "to effectuate [chapter 275's] broad purpose of

---

[11] In contrast, the California legislature has enacted a law that does restrict an employer's ability to require employees to assume expenses as part of an employment agreement. California Labor Code section 2802(a) provides that:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Thus it is per se unlawful in California for an employment contract to apportion expenses to an employee. Edwards v. Arthur Andersen LLP, 189 P.3d 285, 295 (Cal. 2008). Not so in New Hampshire.

16

protecting employees." Doc. No. 79 (quoting Galloway v. Chicago-Soft, Ltd., 142 N.H. 752, 759 (1998)). The drivers are undoubtedly correct that the remedial legislation in chapter 275 should be interpreted in an employee-protective manner. But that does not mean that it must be interpreted in the most employee-protective manner conceivable. To the contrary, New Hampshire courts are not hesitant to reach decisions adverse to employees in cases applying chapter 275 legislation if the circumstances so require. See, e.g., Grimard v. Rockingham Cnty. Dep't of Corr., 161 N.H. 69, 73 (2010) (construing N.H. Rev. Stat. Ann. § 275:43-b(I)); Labor Ready Ne., Inc. v. N.H. Dep't of Labor, 147 N.H. 721, 723 (2002) (construing N.H. Rev. Stat. Ann. § 275:51(I)). Accordingly, I reject the drivers' proposed interpretation and instead conclude that the exception covers statutory employees who are paid for their expenses by other means.

## C. The Operating Agreement

The drivers next claim that regardless of my interpretation of the Reimbursement Statute, their expenses were not "paid for" by FedEx because the OA clearly states that the settlement payments were provided exclusively as compensation for services. They quote several provisions of the OA which note that payments

17

are provided in return "for services provided" or for periods in which a driver "provides services" under the OA.[12]  See Doc. No. 80-1.  The drivers argue that this unambiguous language clearly specifies that their labor, rather than their expenses, was "paid for by wages, cash advance, or other means," and that the drivers, rather than FedEx, were required to "bear all costs and expenses incidental to operation of the[ir vehicles]."[13]  Doc. No. 79 (quoting N.H. Rev. Stat. Ann. § 275:57(I); Doc. No. 80-

---

[12] The drivers never explain what they believe the term "services" entails as it is used in the OA, other than that it does not include assuming work-related expenses.  See Doc. Nos. 79, 87.  I assume that they interpret "services" to refer only to labor, such as dropping off and picking up packages.

[13] The drivers rely heavily on a California state court decision in support of this view.  See Estrada v. FedEx Ground Package Sys., Inc., 64 Cal. Rptr. 3d 327, 339 (2007).  As read by the Estrada court, the OA "provides that it is 'for services provided,' not expenses incurred," and thus the "suggestion that the settlement formula is keyed to specific expenses and, as such, includes reimbursement for those expenses, is not supported by any evidence."  Id.  If my conclusion to the contrary appears to be in conflict with Estrada's reasoning, it is enough to note that the Estrada court construed the OA in light of a markedly different reimbursement statute.  See supra note 11.  In California, "[a]n employer shall indemnify his or her employee for all necessary expenditures," without qualification or exception, see Cal. Lab. Code § 2802(a), and California employers are consequently required to segregate employee compensation between labor and expense reimbursement. See infra note 16 (citing Gattuso v. Harte-Hanks Shoppers, Inc., 169 P.3d 889, 891 (Cal. 2007)).  It is therefore not surprising that Estrada considered whether the OA's settlement structure was "keyed to specific expenses" to determine whether FedEx had complied with section 2802(a) of the California Labor Code.

18

1).  The drivers also present extrinsic evidence in support of their view, which I need not consider in light of my agreement with them that the terms of the OA are clear.[14]  Cf. Dillman v. N.H. Coll., 150 N.H. 431, 434 (2003) (citing Galloway, 142 N.H. at 756; Erin Food Servs., Inc. v. 688 Props., 119 N.H. 232, 235 (1979)) ("[T]he interpretation of a contract is an issue of law for this court to resolve. . . . and the trial court . . . properly look[s] to extrinsic evidence" when "contract terms are ambiguous").[15]

As the drivers concede, the settlement payments they

---

[14] Two expenses claimed by the drivers are not explicitly mentioned in the OA: Department of Transportation physical exams and mobile phone costs.  See Doc. No. 80-1.  Assuming that the drivers incurred both expenses "at the request of" FedEx, see N.H. Rev. Stat. Ann. § 275:57(I), I find that the OA apportions them to the drivers and that this apportionment would be clear to any reasonable person under the circumstances.  The drivers agreed in the OA "to bear all costs and expenses incidental to operation of [their vehicles], including, without limitation," a long list of potential expenses, some of which have an exceedingly attenuated connection to vehicle operation.  See Doc. No. 80-1 (including, for example, workers compensation assessments).  It thus seems clear in context that any work-related expenses for physical exams or mobile phones were "incidental to operation of" the drivers' vehicles.

[15] Although the OA is governed by Pennsylvania law, see Doc. No. 80-1, neither party mentions this fact or cites a single Pennsylvania case in support of their arguments.  Because the parties note no differences between the law of New Hampshire and that of Pennsylvania as it pertains to the basic contract principles at issue here, I follow their lead and rely on New Hampshire case law in my examination of the OA.

19

received were provided in exchange for their agreement to "provide[] services under the [OA]." See Doc. No. 80-1. This necessarily incorporates the terms of the OA, which required the drivers to, among other things, bear the costs of purchasing or leasing their vehicles, maintaining their vehicles, and purchasing fuel. As previously discussed, the drivers' promise to comply with these terms was the consideration that they offered to FedEx, and FedEx's promise to compensate the drivers in accordance with the settlement structure was the consideration that it offered to the drivers. This bargained-for exchange made the OA binding upon both parties.

Contrary to the drivers' contention, FedEx does not bear the burden to identify exactly what portion of the settlement payments represented compensation for services (in the limited sense of dropping off and picking up packages) and what portion represented compensation for expenses.[16] The OA obligates the

---

[16] In contrast, FedEx would bear such a burden if California's expense indemnification statute applied in New Hampshire. See Gattuso, 169 P.3d at 891 (citing Cal. Lab. Code § 2802(a)) ("[A]n employer may satisfy its statutory reimbursement obligation by paying employees enhanced compensation . . . provided there is a means or method to apportion the enhanced compensation to determine what amount is being paid for labor performed and what amount is reimbursement for business expenses."). As previously discussed, the New Hampshire legislature has not defined "services" in a manner that

drivers to provide services under terms and conditions that include the assumption of certain expenses and it obligates FedEx to pay the drivers for doing so. Labor provided in a manner inconsistent with these terms and conditions – for instance, making all required pickups and deliveries on a bicycle – would constitute a material breach of the OA, thereby excusing FedEx from making any payments at all to that driver.[17]

---

differentiates so sharply between labor and work-related expenses. Nothing in New Hampshire law requires an employer to distinguish between the two when compensating workers.

[17] This is true for two reasons. First, the OA is not a divisible contract with separate employee obligations to (1) pick up and deliver packages and (2) bear certain work-related expenses so as to perform the first obligation in a particular fashion. See In re Trailer & Plumbing Supplies, 133 N.H. 432, 435 (1990) ("If the parties gave a single assent to the whole transaction, the contract is indivisible, while it is divisible if they assented separately to several things." (quoting Lemire v. Haley, 91 N.H. 357, 360 (1941))). Thus, a breach of any material term of the OA by a driver would wholly excuse FedEx from its obligations under the OA. Second, the drivers' agreement to assume work-related expenses is a material term of the OA. For a contract term to be material, it:

> must go to the root or essence of the agreement between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract. A breach is material if: (1) a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions; (2) the breach substantially defeats the contract's purpose; or (3) the breach is such that upon a reasonable interpretation of the contract, the parties considered

21

The OA's settlement structure as a whole constitutes the consideration for the drivers' promise to assume material obligations in the OA that are not expressly tied to a particular component of the settlement structure, such as the obligation to incur work-related expenses.  Hence, FedEx need not point to any particular portion of the settlement structure to prove that the drivers were paid for assuming the claimed expenses by the settlement structure as a whole.

The OA clearly establishes that the drivers promised FedEx that they would assume the claimed expenses, and that FedEx promised the drivers that it would pay them for doing so in the course of "provid[ing] services under the Agreement."  See Doc. No. 80-1.  This bargained-for exchange demonstrates that FedEx has "paid for" the drivers to bear the claimed expenses by "other means" as those terms are understood in the Reimbursement Statute.

---

the breach as vital to the existence of the contract.

Found. for Seacoast Health v. Hosp. Corp. of Am., 165 N.H. 168, 181-82 (2013) (internal quotation marks omitted) (quoting Ellis v. Candia Trailers & Snow Equip., 164 N.H. 457, 467 (2012)). Failure to incur the relevant expenses would surely constitute a material breach of the OA under all three of the Seacoast Health tests.  See id.

## IV. CONCLUSION

It is undisputed that the drivers shouldered the burden of the claimed expenses throughout their employment with FedEx. The OA clearly establishes that such an arrangement was the mutual intention of the contracting parties. It is equally clear that the Reimbursement Statute was not intended to frustrate the parties' intentions or limit their freedom of contract, at least to the extent of apportioning work-related expenses. Accordingly, I conclude that the claimed expenses were "paid for by wages, cash advance, or other means" and that the drivers have no right to reimbursement under the Reimbursement Statute. I grant FedEx's renewed motion for summary judgment (Doc. No. 84) and deny the drivers' renewed motion for partial summary judgment (Doc. No. 78) on the reimbursement claim (Count VIII).

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

March 19, 2014

cc:  Susan E. Ellingstad, Esq.
     Jordan M. Lewis, Esq.
     Edward K. O'Brien, Esq.
     Jozef Kopchick, Esq.

Kenneth Sansom, Esq.
Leann M. Walsh, Esq.
James C. Rehnquist, Esq.
Lucy J. Karl, Esq.