**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4539**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

UNDER SEAL,

Defendant - Appellant.

**No. 15-4569**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

UNDER SEAL,

Party-in-Interest – Appellant,

and

PEDRO ANTHONY ROMERO CRUZ, a/k/a Payaso; JOSE LOPEZ TORRES, a/k/a Peluca, a/k/a Medio Polvo, a/k/a Peluquin, a/k/a Jose Alejandro Donez, a/k/a Lopez Manuel Torres; JAIME ROSALES VILLEGAS, a/k/a Demente, a/k/a Lil Demente; ALVIN GAITAN BENITEZ, a/k/a Pesadilla, a/k/a Lil Pesadilla, a/k/a Lil Tuner, a/k/a Tooner, a/k/a Lil Tunnel; CHRISTIAN LEMUS CERNA, a/k/a Leopardo, a/k/a Bago, a/k/a Vago, a/k/a Gatito, a/k/a Christian Josue Lemus Alfaro; OMAR DEJESUS CASTILLO, a/k/a Lil Payaso, a/k/a Lil Slow;

DOUGLAS DURAN CERRITOS, a/k/a Lil Poison, a/k/a Guason, a/k/a Lunche, a/k/a Guadalupe; MANUEL ERNESTO PAIZ GUEVARA, a/k/a Solitario, a/k/a Colita; JOSE DEL CID, a/k/a Duende; JESUS ALEJANDRO CHAVEZ, a/k/a Chuy; JUAN CARLOS MARQUEZ AYALA, a/k/a Skinny; ARAELY SANTIAGO VILLANUEVA, a/k/a Slow, a/k/a Lil Slow, a/k/a Spider; GENARO SEN GARCIA, a/k/a Gatuso,

Defendants.

———————————

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (1:14-cr-00349-GBL-1; 1:14-cr-00306-GBL-1)

———————————

Argued: December 7, 2016                                          Decided: April 5, 2017

———————————

Before WILKINSON, MOTZ, and FLOYD, Circuit Judges.

———————————

Affirmed in part, dismissed in part, vacated in part, and remanded with instructions by published opinion. Judge Floyd wrote the majority opinion, in which Judge Wilkinson joined. Judge Motz wrote a separate opinion concurring in part and concurring in the judgment.

———————————

**ARGUED:** Carmen D. Hernandez, Highland, Maryland, for Appellant. Christopher John Catizone, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Vernida R. Chaney, CHANEY LAW FIRM PLLC, Fairfax, Virginia, for Appellant. Dana J. Boente, United States Attorney, Heather Alpino, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

———————————

FLOYD, Circuit Judge:

Appellant, a juvenile during all relevant events in this case, appeals two sets of decisions relating to his juvenile prosecution.[1]  First, Appellant appeals the district court's decision to grant the federal government's motion to dismiss the information filed against him in a juvenile delinquency proceeding without prejudice, and its decision to deny Appellant's motion to dismiss the information with prejudice.  Second, Appellant appeals the district court's decision to authorize the federal government to disclose two confidential documents and Appellant's identity to third-parties, contending that the disclosed information should have been kept private.

For the reasons that follow, we dismiss as interlocutory the appeal over the dismissal of the information without prejudice and the denial of Appellant's motion for dismissal with prejudice.  However, we affirm the district court's authorization of disclosure of the aforementioned confidential documents.  Finally, because we believe that the controversy surrounding the disclosure of Appellant's identity is moot on appeal, we vacate the district court's decision to authorize disclosure of that information.

I.

A.

On October 7, 2013, Nelson Omar Quintanilla Trujillo—a member of the MS-13 gang—was murdered in Fairfax County, Virginia, by several of his MS-13 associates.

---

[1] Federal law prohibits the public release of a juvenile's name in connection with these proceedings.  18 U.S.C. § 5038(e).  Thus, we use the designation "Appellant" throughout this opinion.

Subsequently, a grand jury in the Eastern District of Virginia returned an indictment against multiple adult MS-13 members (the "Adult Defendants") for taking part in Trujillo's murder. The prosecution of some of these individuals (the "Adult Prosecution") remains ongoing. The Adult Prosecution was assigned docket number 1:14-CR-306, and was assigned to the Honorable Gerald Bruce Lee.

Appellant was an MS-13 gang member who took part in Trujillo's murder, but was only sixteen years old at the time the murder took place. On October 16, 2014, the federal government filed under seal a juvenile delinquency information against Appellant in connection with his role in Trujillo's murder (the "Juvenile Prosecution"). In accordance with the jurisdictional requirements of the Juvenile Justice and Delinquency Prevention Act of 1974 (the "JJDPA"), Pub. L. No. 93-415, 88 Stat. 1109, codified as amended in relevant part at 18 U.S.C. § 5032, the information was accompanied by the federal government's certification that Appellant's case was a felony "crime of violence" implicating a "substantial Federal interest," and that Virginia prosecutors had declined to exercise their jurisdiction over Appellant. J.A. 104–05.

Appellant was detained the same day that the information against him was filed. The Juvenile Prosecution was assigned its own docket number, 1:14-CR-349, and was also assigned to the Honorable Gerald Bruce Lee.

On October 16, 2014, the federal government filed a motion pursuant to § 5032 to transfer Appellant for prosecution as an adult for murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). To decide whether to transfer the case, the district court held a hearing that addressed the six statutory factors relevant to the transfer

4

decision under § 5032. On April 21, 2015, the district court issued an order denying transfer. On April 24, 2015, the federal government filed an interlocutory appeal of the district court's order denying transfer.

On July 14, 2015, Appellant's attorney attended a meeting with federal and state prosecutors. During the meeting, the federal prosecutors indicated that the federal government had decided to defer to the Fairfax County Commonwealth Attorney's Office in the prosecution of Appellant. Accordingly, the federal prosecutors informed Appellant's counsel that they intended to dismiss the federal government's interlocutory appeal and then move to voluntarily dismiss Appellant's information in the district court. During the meeting, state prosecutors indicated that they would proceed against Appellant in state court following the completion of the federal government's Adult Prosecution. State prosecutors also presented plea offers to Appellant's attorney requiring Appellant to plead to an adult murder charge, although those offers were never accepted.

On July 16, 2015, the federal government moved to voluntarily dismiss the interlocutory appeal of the denial of transfer. On August 11, 2015, this Court granted the federal government's motion to dismiss.

On August 17, 2015, the federal government moved to voluntarily dismiss Appellant's information pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure, which provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." On August 18, 2015, the district court responded

by dismissing the information without prejudice.  Later that day, Appellant filed a request for a hearing regarding dismissal, which the district court immediately denied.

On September 1, 2015, Appellant filed a motion entitled "Defendant's Motion for Reconsideration or in the Alternative Objections to the United States' Motion to Dismiss Pursuant to Federal Rule of Criminal Procedure 48(a) and the Court's Order Granting the Dismissal."  J.A. 704.  In that motion, Appellant objected to dismissal of the information without prejudice, on the grounds that such a dismissal was part of an improper effort by the federal government to circumvent the JJDPA by using state prosecutors as a proxy to pursue adult charges.  Additionally, Appellant sought dismissal of the information with prejudice, citing a violation of his "right to a speedy trial pursuant to 18 U.S.C. [§] 5036." J.A. 710.  The district court denied Appellant's motion on September 3, 2015.

Upon dismissal of the information, Appellant was released to the custody of immigration authorities.  Appellant has since been deported to his native country, El Salvador; however, he remains subject to prosecution in the United States in connection with his role in Trujillo's murder.

B.

The federal government requested authorization from the district court to disclose three pieces of information to the attorneys for the Adult Defendants (the "Adult Defense Attorneys").  Although these items were subject to confidentiality protections under 18 U.S.C. § 5038, the federal government nonetheless requested disclosure authorization in

6

order to fulfill what it perceived to be potential *Brady*[2] obligations. The items at issue included:

1) The portion of Appellant's testimony from the transfer hearing (the "Transfer Transcript") related to gang activity in the United States and the murder of Trujillo. The original transcript was approximately sixty-five pages long; however, to avoid disclosing personal or extraneous information, the federal government only sought disclosure of approximately twenty-four pages of the testimony.

2) An FBI investigative report (the "Investigative Report") containing statements about Trujillo's murder made by Appellant in an interview with the FBI. The report was approximately five pages long, with approximately one page of redactions.

3) Appellant's identity (which had been redacted from the transcript and report).

The federal government began by requesting—in the case number for the Adult Prosecution—authorization to disclose the Transfer Transcript and the Investigative Report to the Adult Defense Attorneys. The federal government also filed—in the case number for the Juvenile Prosecution—a notice of a request for authorization to disclose the same documents to the Adult Defense Attorneys. In that notice, the federal government identified the Transfer Transcript and the Investigative Report as "potentially

---

[2] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment").

*Brady* material." J.A. 698. The federal government acknowledged that the MS-13 gang had issued a "death threat" against Appellant following his abandonment of the gang. J.A. 698. In response, the federal government proposed seven protective measures designed to prevent any unauthorized disclosure or dissemination.

The notice added that the Transfer Transcript and the Investigative Report needed to be disclosed immediately, because the documents would help the Adult Defense Attorneys determine whether they should obtain a material witness warrant for Appellant, who was at risk of being deported at the time. The federal government noted that if Appellant invoked his Fifth Amendment privilege against self-incrimination, it would consider asking the district court to excuse it from disclosing the Transfer Transcript and the Investigative Report, because it refused to offer Appellant testimonial immunity and "a material witness warrant would be futile" against a silent Appellant. J.A. 699.

In the Juvenile Prosecution case number, Appellant filed an opposition to the federal government's request to disclose the Transfer Transcript and the Investigative Report, arguing that the request was improper, overbroad, and detrimental to Appellant's safety. However, Appellant's opposition papers failed to indicate that he intended to invoke his privilege against self-incrimination.

On September 2, 2015, the district court issued a pair of protective orders in the Adult Prosecution case number—one authorizing the disclosure of the Transfer Transcript, and the other authorizing the disclosure of the Investigative Report. Both protective orders contained the federal government's requested protective measures. One such protective measure was the following provision: "The [Adult Defense] [A]ttorneys

8

may discuss the substance of the [Transfer Transcript and the Investigative Report] with their client, but they shall not provide the client with direct access to the document[s] . . . ." J.A. 725, 727. On September 3, 2015, the district court approved the federal government's disclosure request, in an order issued in the Juvenile Prosecution case number.

Subsequently, the Adult Defense Attorneys expressed their desire to apply for a material witness warrant for Appellant. The federal government responded by moving in the Adult Prosecution case number for authorization to disclose Appellant's identity to the Adult Defense Attorneys, so as to allow them to apply for a warrant.

The federal government also filed in the Juvenile Prosecution case number a notice of a request for authorization to disclose Appellant's identity to the Adult Defense Attorneys. Again, this notice was accompanied by a request for protective measures.

Appellant filed a motion seeking to prohibit the disclosure of his identity. Appellant also filed a separate document, containing a hearing request and Appellant's assertion of his privilege against self-incrimination. Both filings were made in the Juvenile Prosecution case number.

The district court held a hearing in the Juvenile Prosecution case number on September 9, 2015, to help it decide whether to disclose Appellant's identity. There, the district court queried the federal government about its security measures. Additionally, Appellant's attorney explained that Appellant intended to invoke his Fifth Amendment privilege, and the district court acknowledged that it "believe[d] he w[ould]." J.A. 774. During the hearing, Appellant's attorney also requested that, if the district court was

9

inclined to authorize disclosure, it at least stay any disclosure to give Appellant an opportunity for appeal.

On September 9, 2015, the district court in the Adult Prosecution case number issued a protective order authorizing disclosure of Appellant's identity exclusively to the Adult Defense Attorneys to facilitate their application for a material witness warrant. This protective order contained the government's requested protective measures. One such measure was a provision ordering the Adult Defense Attorneys to refrain from disclosing Appellant's identity to their clients until (i) the court scheduled a material witness deposition with Appellant; (ii) 30 days before trial if Appellant remained detained by the district court; or (iii) the attorneys were "otherwise ordered by the court." J.A. 782–83. On September 10, 2015, the district court in the Juvenile Prosecution case number issued an order denying Appellant's motion to prohibit disclosure of his identity. The district court declined to stay any disclosure.

On September 1, 2015, before the district court had authorized any disclosures, Appellant noted an appeal of the dismissal of the information without prejudice. On September 16, 2015, once the various disclosures had been authorized, Appellant noted a separate appeal of the protective orders that were issued in the Adult Prosecution case number (collectively, the "Adult Protective Orders"). On September 17, 2015, Appellant noted a third appeal of the disclosure-related orders that were issued in the Juvenile Prosecution case number (collectively, the "Juvenile Disclosure Orders"), as well as the order denying Appellant's request for dismissal with prejudice in lieu of dismissal without prejudice.

10

II.

In his opening brief, Appellant summarily asserts that this Court has subject-matter jurisdiction in this case pursuant to 28 U.S.C. § 1291. The problem with this assertion—which was not rebutted by the federal government—is that it fails to address the fact that Appellant's appeals all take place in the absence of any final judgment. Because "[p]iecemeal or interlocutory appeals are disfavored," *United States v. Lawrence*, 201 F.3d 536, 537 (4th Cir. 2000), and because "we are obliged to satisfy ourselves of subject-matter jurisdiction, even where the parties concede it," *United States v. Urutyan*, 564 F.3d 679, 684 (4th Cir. 2009), we begin our analysis by addressing whether we have subject-matter jurisdiction in this case.

At the outset, we recognize that "Section 1291 of the Judicial Code confers on federal courts of appeals jurisdiction to review 'final decisions of the district courts.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (quoting 28 U.S.C. § 1291). "Although 'final decisions' typically are ones that trigger the entry of judgment, they also include a small set of prejudgment orders that are 'collateral to' the merits of an action and 'too important' to be denied immediate review." *Id.* (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

A.

For the reasons that follow, we hold that this Court lacks jurisdiction over Appellant's appeal of the dismissal without prejudice of the information filed in his juvenile delinquency proceeding.

11

The dismissal without prejudice of charges is not a final decision in the traditional sense. Generally, a final decision "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (quoting *Catlin v. United States,* 324 U.S. 229, 233 (1945)). We have previously acknowledged that in an adult "criminal case, final judgment means conviction and sentence." *United States v. Lanham*, 631 F.2d 356, 357 (4th Cir. 1980) (per curiam). "A dismissal without prejudice is clearly neither, and the order being interlocutory, . . . the appropriate time to review a dismissal [without prejudice] is after reindictment and conviction." *Id.*; *see also United States v. Day*, 806 F.2d 1240, 1242 (5th Cir. 1986) ("It is well settled that an order dismissing a criminal indictment without prejudice is not a 'final judgment' under section 1291." (collecting cases)).

The same reasoning applies in the juvenile context. Although an adjudication of delinquency and a sentence end a juvenile prosecution, a dismissal without prejudice of an information does not. Thus, under traditional § 1291 principles, appellate review of the dismissal is improper unless and until an adjudication of delinquency and sentencing take place.

Furthermore, the dismissal without prejudice of charges is not an appealable collateral order. An appealable collateral order must be "effectively unreviewable on appeal from a final judgment," *Will v. Hallock*, 546 U.S. 345, 349 (2006), which occurs only when "a sufficiently important interest would be imperiled by our refusal to provide an immediate appellate review," *Cobra Nat. Res., LLC v. Fed. Mine Safety & Health*

12

*Review Comm'n*, 742 F.3d 82, 86 (4th Cir. 2014). The Supreme Court and this Court have long recognized, however, that a defendant whose indictment was dismissed without prejudice "has not been injured by [the prosecution's] termination in his [or her] favor." *Lanham*, 631 F.2d at 358 (quoting *Parr v. United States*, 351 U.S. 513, 517 (1956)) (first modification in original). Indeed, "[i]f [a defendant] is not reindicted, [he or she] will never have suffered injury as a result of the dismissal." *United States v. Moller-Butcher*, 723 F.2d 189, 191 (1st Cir. 1983). "If, on the other hand, [a defendant] is reindicted, then the dismissal is an intermediate step in the prosecution which may be reviewed only after final judgment in the case." *Id.* (citing *Parr*, 351 U.S. at 518–19).

Again, this reasoning is equally applicable in the juvenile context. Appellant generally cannot be "injured" by the dismissal without prejudice of the information unless and until he is adjudicated delinquent and sentenced.[3] He therefore cannot establish that a sufficiently important interest would be imperiled by our refusal to immediately review this dismissal.

---

[3] This observation is subject to at least one exception. If the federal government moves for dismissal of a juvenile delinquency information against a defendant, and then brings an adult indictment against the defendant after he or she becomes an adult that is premised on the same misconduct that the information was premised on, the federal government violates 18 U.S.C. § 5032, and so the defendant is injured if he or she moves for dismissal of the indictment on that ground but sees that motion denied. *See United States v. Smith*, 851 F.2d 706, 708 (4th Cir. 1988) (allowing an interlocutory appeal under such circumstances). Appellant asserts that he likewise has a right not be subject to a state adult prosecution following the dismissal of his federal juvenile delinquency information. Assuming that this assertion is true (and we doubt it is), Appellant must wait until he is subject to a state adult prosecution, brings a motion to dismiss premised on that alleged right, and sees that motion denied, before he can claim injury to that alleged right. The dismissal without prejudice of a federal juvenile delinquency information, standing alone, does not injure that alleged right.

Because the dismissal without prejudice of Appellant's information was neither a traditional final order, nor an appealable collateral order, we conclude that we lack jurisdiction under § 1291 to review this dismissal.

B.

We also hold that this Court lacks jurisdiction over Appellant's appeal of the denial of his motion to have the information dismissed with prejudice on the basis of an alleged violation of his speedy trial rights under 18 U.S.C. § 5036.

Appellant's appeal of the above-described denial is clearly an appeal from an interlocutory, rather than a final, order. The denial of Appellant's § 5036 claim does not end Appellant's juvenile prosecution on the merits. *See Digital Equip.*, 511 U.S. at 867.

This denial is, moreover, not an appealable collateral order. In *United States v. Buchanan*, we held that in an adult criminal proceeding, an order denying a motion to dismiss premised on an alleged violation of the Speedy Trial Act, 18 U.S.C. § 3161, is not an appealable collateral order. 946 F.2d 325, 327 (4th Cir. 1991). We explained that such an order would "not be 'effectively unreviewable' on appeal from a final judgment," because "the guarantee of a speedy trial does not embody a right 'not to be tried'" that would be undermined by a full prosecution. *Id.* (quoting *United States v. MacDonald*, 435 U.S. 850, 861 (1978)); *cf. Abney v. United States*, 431 U.S. 651, 658–61 (1977) (approving interlocutory appeal of the denial of dismissal on double jeopardy grounds, because a defendant's right not to be tried twice would be forever lost absent interlocutory appeal). "Rather, '[i]t is the delay and not the trial that is the target of the

14

[Speedy Trial] Act' and proceeding to a final judgment 'does not cause or compound the harm at which the statute is aimed.'" *Buchanan*, 946 F.2d at 327 (quoting *United States v. Mehrmanesh*, 652 F.2d 766, 769–70 (9th Cir. 1980)) (first modification in original).

We believe that *Buchanan* compels the conclusion that a denial of a motion made pursuant to § 5036 is not subject to interlocutory appeal. The Ninth Circuit has already reached this conclusion, on the basis of rather convincing reasoning:

> As in the sixth amendment and Speedy Trial Act context, the right that is being asserted [by a defendant invoking § 5036] is the right to a speedy trial: "It is the delay and not the trial that is the target of the" juvenile speedy trial provision. [*Mehrmanesh*, 652 F.2d] at 769. Because it is the delay that is the focus of a juvenile's speedy trial claim, allowing a juvenile to be tried prior to resolution of the speedy trial claim will not "cause or compound the harm" at which the juvenile speedy trial provision is aimed. *Id.* at 769–70.

*United States v. Brandon P.*, 387 F.3d 969, 973 (9th Cir. 2004). We adopt the Ninth Circuit's reasoning here, and thus decline interlocutory review of Appellant's § 5036-based appeal.[4]

---

[4] Because the federal government was denied the ability to transfer Appellant to an adult prosecution in this case, we need not address the question of whether the denial of a § 5036 motion can become immediately appealable if it is made by a juvenile defendant transferred to an adult prosecution. We therefore decline to rule on this question, which we acknowledge has divided our sister circuits. *Compare United States v. A.R.*, 203 F.3d 955, 962–63 (6th Cir. 2000) (holding that the denial of a § 5036 motion is immediately appealable if the juvenile defendant makes the appeal after being transferred to an adult prosecution, on the grounds that if a juvenile defendant "ha[s] to wait until after trial and a final judgment to appeal the claim, the adult trial would have already sacrificed the legal and practical benefits of being tried as a juvenile" (internal quotation marks omitted)) *and United States v. David A.*, 436 F.3d 1201, 1205 (10th Cir. 2006) (expressing agreement with *A.R.*) *with Brandon P.*, 387 F.3d at 972–74 (holding that a § 5036 denial is not immediately appealable even if the juvenile defendant has been transferred to an adult prosecution, on the grounds (1) that "it is the delay—not the

15

Because the denial of Appellant's motion alleging a violation of his § 5036 speedy trial rights was neither a traditional final order, nor an appealable collateral order, we conclude that we lack jurisdiction under § 1291 to review this denial.

C.

Finally, we hold that we do have jurisdiction pursuant to § 1291 to review orders authorizing disclosure of JJDPA-protected juvenile records and information, at least where the object of the orders is to ensure that criminal defendants are able to present an effective defense.

Admittedly, the Juvenile Disclosure Orders and the Adult Protective Orders that Appellant complains about are not appealable final decisions in the traditional sense. These orders ended neither the litigation of the Juvenile Prosecution nor that of the Adult Prosecution. *See Digital Equip.*, 511 U.S. at 867. Nonetheless, these orders do, in our view, belong to a class of appealable collateral orders.

Under the modern collateral order doctrine, "an appealable collateral order must '[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" *Cobra*, 742 F.3d at 86 (quoting *Will*, 546 U.S. at 349). In making a collateral order determination, "our focus is not on the particular order at

---

treatment of the juvenile as a juvenile—that is targeted by the juvenile speedy trial provision, and an immediate appeal is not necessary to vindicate this right," and (2) that the well-settled right to appeal an interlocutory transfer order already adequately protects the right of a juvenile to be treated as such).

issue, but rather on the 'entire category' of orders to which it belongs." *Id.* at 87 (quoting *Digital Equip.*, 511 U.S. at 868).

With respect to the first requirement, the district court's orders conclusively determined a disputed question. "This 'most basic element' is sometimes presumed satisfied so long as the district court . . . has decided the matter presented on appeal." *Id.* at 88 (quoting 15A Charles Alan Wright et al., *Federal Practice and Procedure* § 3911.1 (2d ed. 1992)). The Juvenile Disclosure Orders and the Adult Protective Orders unequivocally decided to authorize disclosure, and "there is [no] 'plain prospect' that the lower could alter its own ruling." *Id.* (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 407 (1st Cir. 1987)). Thus, the first requirement of the collateral order doctrine is met.

Moreover, the district court's orders are separate from the merits. The orders at issue here were decided based on consideration of the Adult Defendants' interest in receiving material useful to the presentation of their defense, as well as Appellant's interests in confidentiality and safety. These orders do not decide the guilt or innocence of the Adult Defendants, or the guilt or innocence of Appellant. In other words, there is not even "a *threat* of substantial duplication of judicial decision making." *Id.* at 89 (internal quotation marks omitted). The second requirement of the collateral order doctrine is therefore met.

Finally, we hold that the district court's orders belong to a category of orders that are "effectively unreviewable" on appeal from final judgment. Again, this requirement is met only when "a sufficiently important interest would be imperiled by our refusal to

17

provide an immediate appellate review." *Id.* at 86. Our precedent confirms that a juvenile's confidentiality interest in records and information protected by 18 U.S.C. § 5038 is of sufficient importance, and the harm to it sufficiently irreparable if threatened, to warrant immediate appellate review. *See United States v. Smith*, 851 F.2d 706 (4th Cir. 1988).

In *Smith*, the defendant filed a motion to dismiss his adult indictment—which was premised on the same alleged misconduct that had been the subject of a dismissed juvenile information—on the grounds that it was unlawful for him to be tried as an adult. *Id.* at 707–08. The district court denied the defendant relief, and the defendant appealed. *Id.* at 708. This Court treated the denial as an immediately appealable collateral order, reasoning that "much of the sequellae of [the defendant's] right to be tried as a juvenile, if that claim is meritorious, would be irrevocably lost" upon postponed appellate review. *Id.* The "sequellae" cited were a juvenile's "entitle[ment] to the sealing of court records, limitation of inquiries into records, protection from photographing and withholding of his name and picture from the news media." *Id.* (citing, *inter alia*, 18 U.S.C. § 5038).

Similarly, orders authorizing the disclosure of protected juvenile records and information, if not immediately appealable, render juvenile confidentiality protections "irrevocably lost." These confidentiality protections, as discussed below, safeguard a juvenile's interest in privacy, safety, and avoiding retaliation. Orders undermining these protections therefore implicate an important interest that would be thwarted by a refusal by this Court to offer immediate appellate review. Because the Juvenile Disclosure

18

Orders and Adult Protective Orders belong to this category of orders, we hold that the third requirement of the collateral order doctrine is met.

In sum, we conclude that the Juvenile Disclosure Orders and the Adult Protective Orders are within this Court's collateral order jurisdiction.

## III.

We must next determine whether Appellant has standing to appeal the Juvenile Disclosure Orders and the Adult Protective Orders, and if he does, whether the appeal of those orders is moot. Because standing and mootness address themselves to the "justiciability" of a dispute, *Lebron v. Rumsfeld*, 670 F.3d 540, 561 (4th Cir. 2012), we analyze these issues before exploring the merits of the appealed orders.

## A.

Appellant appeals two sets of rulings: the Juvenile Disclosure Orders issued in the Juvenile Prosecution case number, and the Adult Protective Orders issued in the Adult Prosecution case number. We hold that Appellant has standing to appeal both sets of rulings.

"As a general rule, only named parties to the case in the district court and those permitted to intervene may appeal an adverse order or judgment." *Doe v. Public Citizen*, 749 F.3d 246, 257 (4th Cir. 2014) (citing *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam)). "The reason for such a rule is obvious: because a nonparty generally is not bound by a judgment, he [or she] ordinarily cannot be aggrieved by the judgment to the extent necessary to permit appellate review." *Kenny v. Quigg*, 820 F.2d 665, 667 (4th

19

Cir. 1987) (citing *Newberry v. Davison Chem. Co.*, 65 F.2d 724, 729 (4th Cir. 1933)). Moreover, an appellate tribunal is generally not the proper place for a litigant to commence its participation in a case, as is too often the situation for nonparty appellants.

In cases where the justifications behind the general rule are inapplicable, however, we have shown greater flexibility with respect to nonparty appellants. As we recently explained in *Public Citizen*, "a nonparty [may] appeal a district court's order or judgment when the appellant (1) possessed 'an interest in the cause litigated' before the district court and (2) 'participated in the proceedings actively enough to make him privy to the record.'" 749 F.3d at 259 (quoting *Kenny*, 820 F.2d at 668).

Appellant's appeal of the Juvenile Disclosure Orders is, with respect to standing, unproblematic. That appeal is simply a run-of-the-mill effort by a named party to seek review of adverse district court rulings. Appellant no doubt has standing to proceed with such an appeal.

Moreover, we hold that Appellant has standing to appeal the Adult Protective Orders. Although Appellant was not a party in the Adult Prosecution, we believe that Appellant's appeal of the Adult Protective Orders satisfies the two *Public Citizen* requirements for nonparty appeals.

Regarding the first requirement, Appellant clearly possessed juvenile confidentiality interests that were impacted by the Adult Protective Orders. The JJDPA "mandates the non-disclosure of juvenile delinquency proceeding records" and related information, in order to safeguard "interests of juvenile confidentiality." *United States v. Under Seal*, 709 F.3d 257, 261–62 (4th Cir. 2013). Although the Adult Protective Orders

20

may have been justified by exceptions to the JJDPA—as discussed below—the disclosures they authorized still clearly undermined Appellant's juvenile confidentiality interests.

Regarding the second requirement, Appellant filed written objections and participated in a hearing contesting disclosure of what Appellant argued was confidential material, although the district court nonetheless ruled against him. We have previously held that the filing of objections addressing confidentiality issues, which "the district court fully considered, and overruled," was "akin to party participation" as it pertains to those issues. *Public Citizen*, 749 F.3d at 260; *see also Kenny*, 820 F.2d at 667–68 (permitting a nonparty to appeal a district court's approval of a sale of stock, where the nonparty appellant filed objections to the sale, which the district court considered but overruled). We adhere to this reasoning in the present case.

Admittedly, Appellant's participation in the litigation of the Adult Protective Orders was indirect, because his filings and his hearing all took place in the Juvenile Prosecution case number rather than the Adult Prosecution case number. Nonetheless, in light of the highly unique circumstances of this case, we believe that Appellant's challenges to the Juvenile Disclosure Orders were also in effect challenges to the Adult Protective Orders. Both sets of orders were issued by the exact same judge, centered on identical issues, and involved identical disclosures.

Furthermore, permitting Appellant's nonparty appeal would in no way implicate the special standing concerns cited in *Public Citizen*. Appellant's appeal is designed to vindicate his own legal right to have information pertaining to him kept confidential;

21

centers on specific, statutorily-protected confidentiality interests; and represents a juvenile's effort to benefit from a juvenile-specific statute. His appeal, therefore, does not implicate "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, [or] the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751 (1984), *quoted in Public Citizen*, 749 F.3d at 259–60.[5]

In sum, we hold that Appellant's appeal of the district court's disclosure authorization orders is on firm footing with respect to standing.

B.

Secure in Appellant's standing to move forward with his appeal of the district court's disclosure authorization orders, we now address the question of whether Appellant's appeal is nonetheless moot. Regarding the disclosure of the Transfer Transcript and the Investigative Report, we hold that a live controversy still exists as to

---

[5] In *Public Citizen*, we suggested that these standing concerns were "prudential," based on a citation to *Allen* and a corresponding explanatory parenthetical. *Public Citizen*, 749 F.3d at 259–60 (citing *Allen*, 468 U.S. at 751). We now expressly acknowledge, however, that the Supreme Court has recently pushed back on *Allen*'s "prudential" language. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). In *Lexmark*, the Supreme Court clarified that the zone of interests concern refers to an issue of statutory authorization, the generalized grievance concern an issue of "constitutional" dimensions, and the third-party standing concern an issue that is "harder to classify." *Id.* at 1387 & n.3. Importantly, regardless of how these three concerns are labeled, none of them are implicated by Appellant's appeal.

those matters. Regarding the disclosure of Appellant's identity, however, we hold that that matter is moot.

1.

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. U.S. Const. art. III, § 2, cl.1. Moreover, federal courts do not issue advisory opinions; they "only decide cases that matter in the real world." *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 589 (4th Cir. 2016) (quoting *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010)). As such, a case is mooted on appeal when a court is unable to grant any "effectual relief" to the prevailing party. *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). Nonetheless, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (quoting *Knox v. Service Employees*, 132 S. Ct. 2277, 2287 (2012)). "While the prospect of partial relief is sufficient to defeat mootness, mere speculation 'afford[s] no basis for finding the existence of a continuing controversy as required by Article III.'" *Constand v. Cosby*, 833 F.3d 405, 409 (3d Cir. 2016) (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 700 (3d Cir. 1996)).

The federal government contends that the issue of the propriety of the district court's authorization of the disclosure of the Transfer Transcript and the Investigative Report is moot on appeal, because this Court cannot grant Appellant any effectual relief.

23

According to the federal government, because this Court can only retract the disclosures, but cannot order the recipients of the disclosed documents to forget the information contained therein, review by this Court does not do Appellant any good. We disagree.

In *Church of Scientology*, the Supreme Court addressed a challenge to an Internal Revenue Service summons seeking certain taxpayer records, where the records had already been turned over in response to the summons. 506 U.S. at 10–11. The Court unanimously held that the appeal was not moot, because "the Government's continued possession of those materials" constituted an "affront to the taxpayer's privacy," which could be addressed with the "partial remedy [of] ordering the Government to destroy or return any and all copies it may have in its possession." *Id.* at 13.

Likewise, in this case we believe that Appellant has a privacy interest in records of his testimony and interview—i.e., the Transfer Transcript and the Investigative Report— that is affronted by the Adult Defense Attorneys' continued possession of those records. These records contain several pages of statements that Appellant made with an expectation of confidentiality, which is undermined when the statements are not kept confidential. As such, this Court has the power to grant Appellant effectual relief in the form of an order to have those records destroyed or returned.

Such an order, moreover, would also benefit Appellant in that it would close the door to an ongoing risk of disclosure. The Adult Protective Orders corresponding to the Transfer Transcript and the Investigative Report authorize each of the Adult Defense Attorneys to "discuss the substance of the [Transfer Transcript and the Investigative Report] with their client" so long as they do "not provide their client with direct access to

24

the document[s]." J.A. 725, 727. Were we to rescind the disclosure of the transcript and report, then the Adult Defense Attorneys could no longer discuss the substance of these documents with their clients. This would constitute effectual relief for Appellant.

Consequently, we hold that the controversy regarding the disclosure of the Transfer Transcript and the Investigative Report is not moot.

2.

The federal government also argues that the controversy regarding the disclosure of Appellant's identity is moot. On this matter, we agree with the federal government.

a.

When Appellant's identity was disclosed to the Adult Defense Attorneys, the affront to Appellant's privacy interest in his identity was completed. Appellant's identity is now known to the Adult Defense Attorneys; we cannot unring that bell. Although multi-page records of confidential statements can be ordered destroyed or returned, this Court cannot realistically order individuals to forget a uniquely discrete piece of information like an identity.

Moreover, the Adult Protective Order corresponding to Appellant's identity does not present an ongoing disclosure risk. That order requires the Adult Defense Attorneys to, as a general matter, limit access to Appellant's identity to themselves. It authorizes the Adult Defense Attorneys to disclose Appellant's identity to their clients only in three circumstances: (i) when the court schedules a material witness deposition with Appellant, (ii) 30 days before trial if Appellant remains detained by the district court, or

25

(iii) when "otherwise ordered by the court." J.A. 782–83. The first circumstance appears extremely unlikely to ever arise because Appellant invoked his privilege against self-incrimination, was denied testimonial immunity, was deported to El Salvador, and is not expected to be at risk of prosecution in the United States until after the Adult Prosecution ends. The second circumstance appears extremely unlikely to ever arise for similar reasons. The third circumstance is merely a reiteration of district court authority, rather than a provision creating any new disclosure risk.

Finally, there is no genuine risk of future use of Appellant's identity by the Adult Defense Attorneys. Again, Appellant has already invoked his privilege against self-incrimination, been denied testimonial immunity, and been deported to El Salvador. As such, the Adult Defense Attorneys are extremely unlikely to use Appellant's identity in the one manner in which they were authorized to use it, i.e., in connection with an application for a material witness warrant.

Under these particular circumstances, we are unable to discern a ground for rejecting the federal government's charge that the disclosure of Appellant's identity is a moot controversy. Any risk of future disclosure or use of Appellant's identity is not simply small, it is entirely speculative.

b.

This conclusion does not end our analysis, however, for we must now determine how to dispose of the moot aspect of Appellant's appeal. We believe that vacatur and remand is the appropriate course of action in this case.

26

"Our 'customary practice when a case is rendered moot on appeal is to vacate the moot aspects of the lower court's judgment,'" *Catawba Riverkeeper*, 843 F.3d at 589 (quoting *Norfolk*, 608 F.3d at 161), and then "remand for dismissal," *Mellen v. Bunting*, 327 F.3d 355, 364 (4th Cir. 2003). This "rule is an equitable one, applicable only in limited circumstances, and used to ensure that a losing party's right of appellate review is not frustrated by circumstances out of that party's control." *Id.* Thus, vacatur is improper when the mootness resulted from the "voluntary action of the losing party" below. *Id.* In contrast, "[v]acatur is in order when mootness occurs through happenstance—circumstances not attributable to the parties—or, relevant here, the 'unilateral action of the party who prevailed in the lower court.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71–72 (1997) (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23 (1994)). With that said, some of our sister circuits have suggested that vacatur is improper "when the losing party has made no attempt whatsoever to seek a stay" that could facilitate appellate review. *Constand*, 833 F.3d at 412 (citing *In re Western Pacific Airlines*, 181 F.3d 1191 (10th Cir. 1999); *Mahoney v. Babbitt*, 113 F.3d 219 (D.C. Cir. 1997)).

With these considerations in mind, it is clear that vacatur is in order here. The mootness at issue in this case is attributable to the federal government's conduct of disclosing Appellant's identity to the Adult Defense Attorneys. Moreover, we cannot say that Appellant in any way contributed to mootness by declining to seek a stay. At the hearing addressing the disclosure of Appellant's identity, Appellant's attorney specifically requested a stay in order to facilitate appellate review, but to no avail.

27

We therefore vacate the district court's denial of Appellant's motion to prohibit disclosure of his identity. We also vacate any aspect of the Adult Protective Order corresponding to Appellant's identity that authorizes disclosure of the identity by the federal government to the Adult Defense Attorneys, or authorizes the Adult Defense Attorneys to use the identity or disclose it to others. Our vacatur does not affect any aspect of the latter order that is designed to guard against further dissemination of Appellant's identity. We also remand with instructions to the district court to dismiss the federal government's prior requests to allow disclosure of Appellant's identity. This dismissal should not extend to prior requests by the federal government for safeguards against further dissemination of Appellant's identity.

IV.

Having decided that Appellant has standing to move forward in his appeal, and that Appellant's challenge to the disclosure of the Transfer Transcript and the Investigative Report is not moot, this Court can now address the merits of his challenge. Appellant's challenge turns on whether the JJDPA leaves district courts with discretion to authorize disclosure of juvenile materials, and if it does, whether the district court below nonetheless erred in authorizing the disclosure of the Transfer Transcript and the Investigative Report. We review a district court's interpretation of a statute de novo. *United States v. Hilton*, 701 F.3d 959, 966 (4th Cir. 2012). We review a district court's decision on matters of discretion for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014).

28

A.

At the outset, we must recognize that the JJDPA generally protects the Transfer Transcript and the Investigative Report from disclosure.

In analyzing the disclosure of the Transfer Transcript and the Investigative Report, two provisions of the JJDPA are particularly relevant: subsections (a) and (c) of 18 U.S.C. § 5038. Moreover, § 5038(a) can be divided into three relevant clauses. The first clause, which we refer to as the "Safeguard Clause," provides that "[t]hroughout and upon the completion of the juvenile delinquency proceeding, the records shall be safeguarded from disclosure to unauthorized persons." § 5038(a). The second clause, which we refer to as the "Mandatory Disclosure Clause," instructs that such records "shall be released to the extent necessary to meet" inquiries from any of six types of entities. *Id.* Finally, the third clause, which we refer to as the "Non-Disclosure Clause," cautions that "[u]nless otherwise authorized by this section, information about the juvenile record may not be released when the request for information is related to an application for employment, license, bonding, or any civil right of privilege." *Id.*

At the same time, § 5038(c) provides the following directive:

> During the course of any juvenile delinquency proceeding, all information and records relating to the proceeding, which are obtained or prepared in the discharge of an official duty by an employee of the court or an employee of any other governmental agency, shall not be disclosed directly or indirectly to anyone other than the judge, counsel for the juvenile and the Government, or others entitled under this section to receive juvenile records.

The Transfer Transcript—a record of Appellant's testimony in his transfer hearing—is a record of and relating to a juvenile delinquency proceeding, and is thus

29

protected by both subsections (a) and (c) of § 5038. Furthermore, the Investigative Report—which documents Appellant's statements to law enforcement officers in connection with the Trujillo murder—constitutes both a record and information relating to a juvenile delinquency proceeding protected by § 5038(c).

B.

Although the JJDPA's confidentiality protections attach to both Appellant's transcript and report, we must next consider whether the district court retained discretion to authorize disclosure of these documents notwithstanding the aforementioned protections. We conclude that it did retain such discretion.

We arrive at this conclusion in light of helpful guidance from our sister circuits. The First and Third Circuits have read § 5038(a) as leaving the district court with discretion to authorize disclosure of the records of a juvenile delinquency proceeding. *See United States v. Three Juveniles*, 61 F.3d 86, 90–91 (1st Cir. 1995); *United States v. A.D.*, 28 F.3d 1353, 1355 (3d Cir. 1994). Those courts emphasize that the Safeguard Clause bars disclosure not to "all persons," but only to "unauthorized persons," which suggests that district courts retain discretion to classify certain persons as authorized to receive disclosures. *Three Juveniles*, 61 F.3d at 90–91; *A.D.*, 28 F.3d at 1359.

Additionally, those courts explain how the Mandatory Disclosure Clause does not purport to serve as the exclusive basis of disclosure authority. The Mandatory Disclosure Clause only provides an exclusive list of entities that "shall be" entitled to receive disclosures (i.e., mandatory disclosures); however, it does not address the subject of

entities that "may be" authorized to receive disclosures (i.e., permissive disclosures). *Three Juveniles*, 61 F.3d at 91; *A.D.*, 28 F.3d at 1359.

Those courts add that reading the Mandatory Disclosure Clause to foreclose permissive disclosures would create a superfluity issue. In their view, if the Mandatory Disclosure Clause provided the exclusive list of allowable disclosures, then it would be unnecessary for the Non-Disclosure Clause to specify certain types of requests as incapable of receiving disclosure "unless otherwise authorized" by § 5038; such requests would necessarily be precluded from receiving disclosures if they could not rely upon Mandatory Disclosure Clause authorization. *Three Juveniles*, 61 F.3d at 91; *A.D.*, 28 F.3d at 1359–60.[6]

Those courts also read § 5038(c) as authorizing permissive disclosures. They reason that when § 5038(c) prohibits disclosure of "information and records relating to [any juvenile delinquency] proceeding," except from "others entitled under this section to receive juvenile records," the statute excepts from its disclosure prohibition those authorized by the district court to receive juvenile records under § 5038(a). *Three Juveniles*, 61 F.3d at 91 n.5; *A.D.*, 28 F.3d at 1360. In other words, one of the effects of

---

[6] Although unacknowledged by the First and Third Circuits, we note that one could argue that the Non-Disclosure Clause is somewhat superfluous even if the Safeguard Clause is read to include permissive disclosure authority; after all, the types of requests identified in the Non-Disclosure Clause would necessarily be precluded from receiving disclosure if they were not "otherwise authorized" to receive disclosure via the Mandatory Disclosure Clause or the Safeguard Clause's grant of permissive disclosure authority. Even assuming that this is true, it would simply mean that the Non-Disclosure Clause weighs neutrally on the permissive disclosure authority question, rather than against it.

31

the above-described exception is to import § 5038(a)'s permissive disclosure authority concept into § 5038(c).

The recognition of permissive disclosure authority, moreover, has the virtue of allowing district courts to accommodate disclosure requests in the event that the Constitution requires or at least arguably requires disclosure, regardless of whether the Mandatory Disclosure Clause applies. Examples of such requests include disclosure requests premised on the public's First Amendment interest in access to judicial proceedings, *Three Juveniles*, 61 F.3d at 90; *A.D.*, 28 F.3d at 1359, or disclosure requests premised on a defendant's Sixth Amendment right to material necessary for cross-examination, *United States v. Chacon*, 564 F.2d 1373, 1376–77 (9th Cir. 1977) (Kennedy, J., concurring) (citing *Davis v. Alaska*, 415 U.S. 308 (1974)). Because an absolute non-disclosure reading of subsections (a) and (c) of § 5038 would "raise serious constitutional problems" by erecting a non-disclosure bar in cases where the Constitution actually or arguably requires disclosure—and because a permissive disclosure reading is not "plainly contrary to the intent of Congress" in light of the relevant statutory text—we are obliged to adhere to the latter reading. *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).[7]

---

[7] Our recognition of the virtue of a district court being able to grant disclosure requests that have a constitutional foundation should not be construed to preclude a district court from being able to grant disclosure requests premised on other important interests that lack a constitutional foundation.

The First and Third Circuits' reading of subsections (a) and (c) of § 5038 is convincing, and we now adopt it in this Circuit. Specifically, we read these provisions as containing grants of permissive disclosure authority, subject to limitations that may be imposed elsewhere by the JJDPA.[8]

## C.

Having concluded that district courts retain discretion under § 5038 to authorize limited disclosures of confidential juvenile records and information, we must next decide whether the district court in this case abused its discretion by authorizing the disclosure of the Transfer Transcript and the Investigative Report. As explained below, we conclude that the district court committed no abuse of discretion.

At the outset, we emphasize the principles that guide our review of disclosures of juvenile records and information. "[A]n essential aspect of the juvenile justice system has been to maintain the privacy of the young offender and, contrary to our criminal law

---

[8] The parties extensively discuss *Chacon*, a Ninth Circuit decision holding that a district court—pursuant to the first exception in § 5038(a)'s Mandatory Disclosure Clause—is empowered to authorize disclosure of protected juvenile records to a defendant who was being prosecuted for a criminal transaction that the juvenile participated in. 564 F.2d at 1375–76 (majority opinion). As then-Judge Anthony Kennedy's concurrence noted, the problem with this holding is that it undermines confidentiality protection in a type of case where defendants may need it most—in cases where a juvenile may fear retaliation from adult co-principals, and thus be reluctant to speak freely about a criminal transaction. *Id.* at 1377 (Kennedy, J., concurring). Because in our view § 5038(a)'s Safeguard Clause already contains a general permissive disclosure authority concept, it is unnecessary for us to adopt the *Chacon* majority's § 5038(a)(1)-based "same-transaction" disclosure exception. Moreover, we advise district courts invoking Safeguard Clause-based permissive disclosure authority to remain mindful of then-Judge Kennedy's warnings about the risks associated with authorizing disclosure to adult co-principals.

system, to shield him [or her] from the dissemination of truthful information and transparency that characterizes the punitive system in which we try adults." *United States v. Elkins*, 683 F.3d 1039, 1047 (9th Cir. 2012) (internal quotation marks omitted). Moreover, confidentiality encourages "the juvenile to discuss his [or her] actions freely and completely so that rehabilitation can commence without delay, and without fear of retaliation or censure." *Chacon*, 564 F.2d at 1377 (Kennedy, J., concurring). Juvenile confidentiality is the "norm," and thus any permissive disclosures must be justified by sound reasons and must not be unduly harmful to the juvenile. *Three Juveniles*, 61 F.3d at 92.

We are satisfied that the district court's disclosure authorizations in this case were consistent with these principles and thus within the bounds of its discretion. To begin, the court could reasonably conclude that Appellant's confidentiality interests should give way to the federal government's interest in ensuring that the Adult Defense Attorneys had the materials necessary to present an effective defense for their clients. The Transfer Transcript and the Investigative Report contained Appellant's version of the Trujillo murder in his role as a co-principal, and records of a co-principal's version of an alleged crime can give a defense attorney a better understanding of the case that his or her client faces. Moreover, at the time the court was deciding whether to disclose the Transfer Transcript and the Investigative Report, Appellant was at risk of being deported and had not yet invoked his privilege against self-incrimination; therefore, prompt disclosure of the documents was needed to ensure that the Adult Defense Attorneys could decide

34

whether to apply for a material witness warrant for Appellant before he became unavailable.

Furthermore, the disclosure of the Transfer Transcript and the Investigative Report was done in a circumscribed manner and with an eye toward Appellant's safety. The two documents focused on the factual circumstances surrounding Trujillo's murder; extraneous and personal information was removed from both documents. Finally, the Transfer Transcript and the Investigative Report were each accompanied by a respective protective order outlining seven measures designed to guard against dissemination of the two documents beyond the Adult Defense Attorneys. Those measures were proposed by the federal government itself, for the express purpose of preserving Appellant's safety.

Appellant insists that the district court should have demanded more specificity from the federal government than it did, and that the court should have conducted an *in camera* review of the materials before authorizing disclosure. In light of the federal government's careful redactions, the parties' detailed briefing, and the district court judge's experience presiding over both the Juvenile Prosecution and the Adult Prosecution, we believe that these additional steps—although they would have potentially been helpful—were not necessary.

Under these circumstances, we discern no abuse of discretion in the district court's authorization of disclosure of the Transfer Transcript and the Investigative Report.

V.

In summary, we dismiss Appellant's appeal of the district court's dismissal of Appellant's information without prejudice and its denial of Appellant's motion for dismissal of the information with prejudice. However, we affirm the district court's decision to disclose the Transfer Transcript and the Investigative Report. We vacate as moot the aspects of the district court's judgment authorizing the disclosure of Appellant's identity by the federal government to the Adult Defense Attorneys, and authorizing the Adult Defense Attorneys to use the identity or disclose it to others. Of course, we leave in place the safeguards issued to prevent further dissemination of that information. Finally, we remand with instructions to the district court to dismiss the government's prior requests for disclosure of Appellant's identity, again leaving in place prior requests for safeguards against further dissemination.

*AFFIRMED IN PART,*
*DISMISSED IN PART,*
*VACATED IN PART, AND*
*REMANDED WITH INSTRUCTIONS*

DIANA GRIBBON MOTZ, concurring:

I concur in the opinion for the panel majority, except for its holding that the juvenile had non-party standing to appeal from the protective orders issued in the adult case. The juvenile did not participate at all in the adult case and so by definition did not "participate[] in the proceedings actively enough to make him privy to the record" as required for non-party standing. *Doe v. Public Citizen*, 749 F.3d 246, 259 (4th Cir. 2014) (internal quotation marks omitted).